W. L. REED and wife, Mary Sue Reed, Residents of Fayette County, Tennessee, Appellees,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Appellant.

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 19, 1972.

Certiorari Denied by Supreme Court Aug. 7, 1972.

Walker T. Tipton, Covington, for appellant.

Wilbur F. Cash, Covington, for appellees.

NEARN, Judge.

The question is whether or not the policy of insurance by its terms afforded coverage for the insured under the stipulated facts involved.

The judgment below was in favor of the insured, W. L. Reed and wife, Mary Sue Reed, in the amount of Three Thousand Five Hundred ($3,500.00) Dollars, and the defendant company, Tennessee Farmers Mutual Insurance Company, has appealed. The policy of insurance and all material facts were stipulated below, and the matter was heard by the Judge without the intervention of a jury. The Bill of Exceptions, with one exception, consists entirely of the oral stipulations of counsel and comments by counsel and the Court.

The stipulations are that the defendant issued its policy of insurance to the plaintiffs on March 29, 1969, insuring against loss by fire and other hazards, in the amount of Three Thousand, Five Hundred ($3,500.00) Dollars, one Barcraft house trailer then located in Braden, Tennessee. Subsequent to the issuance of the policy, three significant events occurred. First, in September, 1969, W. L. Reed, in whose name the house trailer was titled, had business negotiations with his grandson, Richard W. Reed, concerning the house trailer. The culmination of the negotiations is represented by an instrument executed by Richard W. Reed, which is as follows:

> "I promise to pay W. L. Reed Three Thousand Seven Hundred and Twenty-Five dollars for one mobile home, twelve by sixty feet, at the rate of Fifty dollars per month with no interest. Notes are to be paid on or before the 20th of each month. Said mobile home belongs to said W. L. Reed until the full amount is paid."

The second significant event occurred about the time the foregoing instrument was executed when the possession of the house trailer was given over to Richard W. Reed and it was moved from its location in Braden, Tennessee, to a location in Shelby County, Tennessee.

The third significant event occurred on February 2, 1970, when the house trailer

was completely destroyed by fire while located in Shelby County, Tennessee.

It was further stipulated that the defendant insurance carrier was not notified of the removal of the property from Braden, Tennessee, nor of the change in possession. Also, the title certificate to the house trailer is still recorded in the name of W. L. Reed and has never been transferred.

The plaintiffs' Declaration alleged ownership at the time of the loss in W. L. Reed; that the house trailer at the time of loss was in Shelby County, Tennessee; and alleged coverage under the terms of the policy.

The defendant's Answer denied the ownership of the named insured and denied coverage, relying on the following condition of the policy which is contained on the first or face page thereof:

"IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, this Company, for the term of years specified above from inception date shown above At Noon (Standard Time) to expiration date shown above At Noon (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the insured name above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere."

After the stipulations as aforesaid and after arguments of counsel were made, the Trial Judge asked Mr. Richard W. Reed, who was not a party to the suit and happened to be sitting in the courtroom, whether or not the house trailer was located in a Fire District in Shelby County. Richard W. Reed answered that it was located in a Shelby County Fire District with a rural-type fire department. The Court then asked Richard W. Reed if there was a fire department at Braden. The answer by Richard W. Reed was that in Braden there was no fire department at all.

The Court then granted judgment for the plaintiffs in the amount of Three Thousand, Five Hundred ($3,500.00) Dollars and held that the title to and the ownership of the house trailer was in W. L. Reed; that the location of the house trailer was not an important factor; and that the perils insured against were not increased, but were probably lessened by the removal from the insured location.

Four Assignments of Error have been filed by the counsel for appellant, but they can be summarized as follows:

I.

The Court erred in ruling that the title to the property insured was in the plaintiff, W. L. Reed.

II.

The Court erred in reaching its decision that the change of location did not increase the risk insured against by relying upon

matters which had not been presented in evidence, to wit: the unsworn statement of Richard W. Reed.

## III.

The Court erred in holding that the plain conditions or terms of the policy were immaterial and unenforceable.

Before ruling on the Assignments of Error, the policy of insurance should be first scrutinized. The policy is styled "Standard Fire Insurance Policy for Tennessee". It is the regular printed form and is the same form used generally to cover building and dwellings and is not a special policy specifically designed for the coverage of mobile homes or house trailers. In the space on the face of the policy designated as "DESCRIPTION AND LOCATION OF PROPERTY COVERED Show construction, type of roof and occupancy of building(s) covered or containing the property covered. If occupied as a dwelling state number of families", the following has been inserted by means of a typewriter:

"Metal 60x12—Metal Roof—1 Story—1 Family—Housetrailer—1967 Model Barcraft—Ser. No. A6021679—Located in Braden, Tennessee."

W. L. Reed is the named insured in the policy. We have carefully read this policy and we are unable to find anywhere therein a representation by the insured of what his interest actually is in the property insured. Nowhere in the policy are we able to find any requirement that the insured's interest in the property be the fee or sole ownership thereof. In fact, the policy is completely silent as to the interest of the named insured in the property covered by the policy. (Of course, the law is that the insured must have at least an insurable interest or the policy is void. This proposition is so well settled and ingrained in the public policy of this state that it requires no citation for its support.) Under the provision styled "Conditions suspending or restricting insurance", we find only the following exclusions:

"(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or

(c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only."

The provision headed "Concealment, fraud" is as follows:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

It is interesting to note that on the back side of the policy there is a printed section styled "ASSIGNMENT OF INTEREST BY INSURED" which provides:

"AN ACTUAL SALE and change of title to the property herein described having taken place, this policy is hereby assigned to [a blank space is provided for a name] address [another blank space] subject to the consent of the Tennessee Farmers Mutual Insurance Company."

Thereafter is provided a space for the date, signature of the insured, and approval by the company. The policy also includes an endorsement or rider styled "DWELLING BUILDING(S) AND CONTENTS FORM No. 49".

Numerous cases have been cited to this Court by counsel for appellant and the appellee to sustain their positions that under the stipulated facts of this case the

written agreement between W. L. Reed and Richard W. Reed did (appellant) did not (appellee) constitute a sale and transfer of ownership of the mobile home. We are of the opinion that none of the cases cited are pertinent, because whichever view is taken there can be no doubt that W. L. Reed had an insurable interest in the mobile home. Under appellee's theory, W. L. Reed was the owner and title holder at the time of loss. Under appellant's theory, W. L. Reed was not the actual owner but Richard W. Reed was such. This is a distinction without a difference. Even if appellant's theory were correct, it is evident that W. L. Reed, under appellant's theory, would, of necessity, be a conditional vendor. Cases are legion that both actual owners and conditional vendors have insurable interests. The policy does not require that the insured interest be any specific interest. In fact, the 229 word sentence first quoted in this Opinion insures against loss for a specific amount and provides "nor in any event for more than the interest of the insured". There being no specific requirement in the policy that the insured's interest must be sole, the immediately heretofore quoted provision in the policy can only mean that the interest can be less than sole or less than the fee. There is no reversible error in the Trial Court's ruling that the title to the property was in the insured simply because it makes no difference. Even if such ruling was error, which we do not concede, it was harmless. Section 27–117, T.C.A. Further, if the insurer seeks to rely on the Concealment provision heretofore quoted regarding alleged misrepresentation of "the interest of the insured therein", there can be no basis for such reliance for the reason that if the policy contains no representation by the insured of his interest in the property, there can be no misrepresentation.

We would further comment on this issue by calling attention to the Assignment form contained on the back side of the policy. This constitutes a suggestion by the company to the insured that when "AN ACTUAL SALE *and* change of title" has taken place, an assignment should be executed and approved by the company. In this case it is uncontroverted that a sale plus a change of title did not take place. The first Assignment of Error is respectfully overruled.

We must overrule the second Assignment of Error. Prior to Richard W. Reed's unsworn answer to the query of the Trial Judge, the record was void of any proof on the question of the creation of an increase or even a decrease in the risk insured against by the moving of the mobile home to its location in Shelby County. If an insurer seeks to avoid liability on the theory of an increase in risk, the burden is on the insurer to prove the increase in risk. Planters' Ins. Co. v. Sorrels (1872) 60 Tenn. 352. The stipulations made in this cause are silent as to any increase in the risk insured against. It is not self-evident to this Court that the moving of the mobile home from Braden, Tennessee, to Shelby County increased the risk. However, we must agree with counsel for appellant that the procedure employed by the Trial Judge in obtaining information from Richard W. Reed was technically incorrect. But, what is the effect of the Trial Judge's action? The burden was never on the plaintiff to prove that which the Trial Judge adduced by unsworn testimony. It was surplusage. Furthermore, when the Trial Judge gave judgment against the company, based in his mind in part on the unsworn testimony, counsel for the company made his objection known to the Court. In response to the objection, the Trial Judge stated:

"If you feel that the facts are different from what he [Richard W. Reed] said, I'll be glad to hear further."

Counsel for the insurer answered "No, sir. I believe it's beyond the scope of the proof in the case and note my exception to that." No further proof was adduced. The Trial

Judge in an irregular manner elicited surplus information which, even if true, was unnecessary information for plaintiff's recovery. The onus to produce it was not on the plaintiff. If it was error, it certainly was harmless error. Section 27–117, T.C. A.

There is no separate specific prohibition in the policy regarding the removal of the mobile home. Therefore, any prohibition, exclusion, or exception regarding the removal of the mobile home must be contained in the 229 word sentence of the policy first copied in this Opinion or not at all. In this writer's opinion, this lengthy 229 word sentence would put to shame even that renowned user of interminable sentences, the late Winston Churchill. Removing as much of the chaff as possible and yet maintaining it as a single sentence, it would read as follows:

"[In consideration of this agreement, for the term specified] at location of property involved [for an amount not exceeding $3,500.00, the company] does insure the insured named [for no more than his interest in the described property] against all DIRECT LOSS BY FIRE, LIGHTNING AND [for loss caused by the necessary protective] REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST . . . EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere."

In seeking to ascertain the meaning of this provision, two things must be remembered. First, this is a standard form policy customarily used for dwellings not usually or easily removed from the real estate to which they are affixed. Second, the policy has added to it "Form No. 49".

■ The situs of the coverage is first described as "at location of property involved". If we were dealing with the ordinary situation where the building insured is, in law, part of the real estate, perhaps no problem would be presented. However, we are not. The company was aware of the fact it was insuring a mobile home for it is so noted on the face of the policy. In that light, the term "at location of property involved" is not restrictive. It could mean anywhere it is located. Next, we come to that part governing the protective removal from premises endangered. The terms of this part of the sentence are preceded by the phrase *"except as hereinafter provided"*. The word "remove" in either noun or verb form is not again found in the policy until we reach the attached Form No. 49, which is a dwelling and household good coverage rider. Under "CONTENTS COVERAGE" the policy provides: "As to 'Contents'—(1) If, during the term of this policy, such property is removed to another location . . ." coverage, to a degree, during the period of "removal" is afforded. This section is followed by a section styled "PERILS INSURED AGAINST" wherein the word "removal" is defined as follows:

"2. REMOVAL, meaning loss by removal of the property covered hereunder from premises endangered by the perils insured against, and the amount of insurance applies pro rata for 5 days at each proper place to which such property shall necessarily be removed for preservation from the perils insured against."

From all of this, we can only conclude that the provision of the policy relied upon by the appellant regarding the removal of the

property is applicable to the necessary protective removal of the contents of a dwelling, or in this case the contents of a mobile home. We do not construe the policy to provide for exclusion of coverage or forfeiture of coverage if the mobile home insured is moved from one location to another. As we view it, any other construction would require that we: (a) hold the lengthy sentence relied upon by the appellant is unambiguous even though it requires the insured to wade through a mass of verbiage and practically all of the fine print of the policy to try to find its meaning in relation to a mobile home, or (b) resolve all ambiguities in favor of the insurer. We can do neither.

In this case a form policy customarily used for dwellings permanently affixed to real estate was used by the insurer. Since the insurer knew it was insuring a mobile home, it would have been a simple thing to place on the face of the policy, or by rider, a statement to the effect that the removal of the mobile home to another location, without the insurer's approval, would void the policy, had it desired such an exception.

The third Assignment of Error is respectfully overruled.

Although our reasons for affirming the judgment below may not be the same as those of the Trial Judge in granting the judgment, we are of the opinion that a right result was reached with no reversible error.

Judgment below affirmed with cost of appeal against appellant.

CARNEY, P. J., and MATHERNE, J., concur.