**CINCINNATI INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**SHELBY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

May 15, 1975.

Certiorari Denied by Supreme Court Sept. 22, 1975.

Morton, Lewis, King & Jones, Knoxville, for plaintiff-appellant, Cincinnati Ins. Co.

Jonathan H. Burnett, Dalton L. Townsend, and Hodges, Doughty & Carson,

Knoxville, for defendant-appellee, Shelby Mut. Ins. Co.

John W. Baker, Jr., W. Edward Parrott, Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, for defendant-appellee, Jack Hanna, d/b/a Pet Kingdom.

CARNEY, Presiding Judge.

The Plaintiff-Appellant, Cincinnati Insurance Company, brought suit for declaratory judgment to determine which contract or contracts of liability insurance afforded coverage to John B. Hanna as against the tort claim for injuries to four-year-old Matthew M. Ramsbottom who inserted his arm through a wire mesh fence or cage at Hanna's home near Knoxville on July 22, 1972. The child's arm was torn from his body by a pregnant lioness owned by Hanna. The Chancellor exonerated from liability the Defendant Shelby Mutual Insurance Company which held a homeowners' policy. He held that the Plaintiff Cincinnati Insurance Company had sole coverage of the Defendant John B. Hanna, d/b/a Pet Kingdom. Cincinnati has appealed and assigned error.

The Plaintiff contends, (1) that since the Defendant John B. Hanna was keeping the lioness at his personal residence, it was not "conduct of a business" within the meaning and coverage of Cincinnati's liability policy; and (2) that if the Court finds that Cincinnati does have coverage, then the Defendant Shelby Mutual also had coverage under its homeowners' policy and the loss should be prorated.

Pending the hearing in the Chancery Court, the tort litigation was settled by a judgment for $100,000 in favor of the minor, Matthew M. Ramsbottom, against the Defendant John B. Hanna, d/b/a Pet Kingdom.

The Defendant John B. Hanna, aged 27 and living in Albany, Georgia, is now employed as Director of Wildlife for ABC Television Scenic Attractions. He is a native of Knox County, Tennessee, and began working with animals at the age of 12. He worked with and studied animals in high school and in college. He returned to Knoxville in 1969 where he worked a few months for a pet shop known as the Animal Farm. Shortly thereafter on December 6, 1969, he opened the Pet Kingdom located on Kingston Pike in Knox County west of Knoxville, Tennessee. The main source of business at the Pet Kingdom was boarding and grooming of animals, the selling of pet supplies, and the sale of tropical fish, monkeys, boa constrictors, and puppies and rabbits at Easter time.

The lioness, Daisy, was purchased by Defendant Hanna as a small cub on July 18, 1970. She weighed only 12 pounds. She was housed at Mr. Hanna's home and bottle fed for several months. During this time she rode around with him in his automobile a great deal. He built a cage for her at Pet Kingdom and she became housed at Pet Kingdom. Daisy became a part of the business attraction and advertisement. Her cost and maintenance was charged as business expenses. In April, 1972, Daisy was taken from Pet Kingdom to the Knoxville Zoo to be bred. After being bred, she was taken to Defendant Hanna's home on Cedar Bluff Road in Knox County where an enclosure was also built to cage her. The cost of building this case was deducted by Mr. Hanna as a business expense on his income tax return.

Defendant Hanna intended to raise cubs and to start a pride of lions. He had no intention of selling Daisy and still owns Daisy though she is now housed at the Knoxville Zoo as a matter of accommodation to him. Her first cubs were born in August, 1972, but some had been given away by Mr. Hanna at the time of the trial. Defendant Hanna was very much interested in lions and had started writing a book on lions and wanted the cubs to be born at his home where he could observe her and the cubs regularly and make notes in detail about the birth and growth of the cubs, etc. At Mr. Hanna's home there were also some water buffaloes, monkeys, leopards, ocelots, wolves, and llamas.

At the time Defendant Hanna applied for liability insurance coverage with Cincinnati Insurance Company on Pet Kingdom, he

had a small zoo located immediately behind the Pet Kingdom premises in which llamas, sheep and goats were being kept. The lioness, Daisy, was also located at the Pet Kingdom. Sometime about July 1, 1971, Cincinnati Insurance Company, through its local agent, Powell Insurors, of Knoxville issued a two months' binder to the Defendant Hanna, d/b/a Pet Kingdom. During the two-months' period a representative of Cincinnati Insurance Company went upon the premises, made an inspection, and agreed to provide permanent liability coverage on condition that the zoo be closed. Hanna agreed with the Cincinnati agent that the animals would be moved from the zoo to his home and that within a period of less than a year the lioness, Daisy, would also be moved from the Pet Kingdom to Hanna's residence.

The representative, a safety engineer named Pulliam, recommended that coverage be written; he sent pictures to the company of the Pet Kingdom premises. The policy was dated September 17, 1971, and extended for one year. It contained an added charge of $215.00 because of the lioness.

The policy of the Cincinnati Insurance Company (Exhibit 20) includes under Coverage A, Bodily Injury Liability, the obligation that the Company shall pay on behalf of the insured, John B. Hanna d/b/a Pet Kingdom, all sums which the insured "shall become legally obligated to pay as damages because of (bodily injury) to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of bodily injury or property damage." Under Section II, Persons Insured, the policy applies to an insured:

"(a) If the *named insured* is designated in the declaration as an individual, the person so designated but only with respect to the *conduct of a business* (emphasis supplied) of which he is the sole proprietorship;"

The policy covered losses involving bodily injury or property damage occurring during the policy period within the policy territory, that territory being defined as including the United States of America, its territories or possessions or Canada.

Appellant Cincinnati insists that the extra charge for the lion of $215.00 was really only for the several months that the lion was to be kept at Pet Kingdom and that when Mr. Hanna took Daisy away from Pet Kingdom and put her in a cage at his home, his keeping of the lioness was not "conduct of a business" within the meaning of the coverage of the Cincinnati policy.

As suggested by Judge Nearn of this Court in the case of *Reed v. Tennessee Farmers Mutual Insurance Co.,* Tenn.App., 483 S.W.2d 721, if Cincinnati had deemed the location of the lioness to be determinative of liability coverage on her, then it would have been a simple and easy matter for Plaintiff to have added a statement to the policy that coverage of the lioness would cease when she was moved from Pet Kingdom. The lioness was still a part of Defendant's business even though removed from Pet Kingdom.

■ We concur in the finding of His Honor the Chancellor that the maintenance of Daisy at Mr. Hanna's home was in conduct of his business. Assignment of error No. I is respectfully overruled.

■ We turn now to the assignments of error II and III that the Chancellor erred in exonerating Shelby Mutual Insurance Company from liability and in failing to hold that both policies afforded coverage and should share the loss on a pro rata basis.

The Shelby Mutual policy was a regular homeowners' policy covering the premises of the home at Route 21, Cedar Bluff Road, Knoxville, Tennessee, where the lioness, Daisy, was being kept at the time the Ramsbottom child was injured.

The Appellant Cincinnati Insurance Company relies upon the exception in the following exclusion in the Shelby Mutual policy to establish liability against Shelby:

"1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

(d) To bodily injury or property damage arising out of business pursuits of any insured, except activities therein which are ordinarily incident to non-business pursuits;" (Underscoring ours.)

As so aptly observed by His Honor the Chancellor, this exception seems to be intended to provide coverage for ordinary homeowner activities even though money may be earned from them. We also agree with His Honor the Chancellor that the keeping of a lion is not "ordinarily incident to a non-business pursuit." Lions are not ordinarily kept at home. See Crane v. State Farm Fire & Casualty Co. (1971), 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089, and the annotation beginning at page 1096 entitled "Construction and Application of Business Pursuits Exclusive Provision in General Liability Policy." Assignments of error II and III are therefore respectfully overruled.

We find no merit in Defendant John B. Hanna's appeal insisting that the Chancellor erred in failing to allow him attorneys' fees. His assignment of error is respectfully overruled.

The judgment of the lower Court is affirmed at the cost of the Appellant Cincinnati Insurance Company.

MATHERNE and NEARN, JJ., concur.