**Ronald Henry ROBINSON, Petitioner-Defendant,**

**v.**

**UTICA MUTUAL INSURANCE COMPANY, Respondent-Plaintiff.**

Supreme Court of Tennessee.

Aug. 20, 1979.

H. Fred Ford, Steve C. Norris, Nashville, for petitioner-defendant.

James M. Doran, Jr., Terry L. Hill, Nashville, for respondent-plaintiff.

## OPINION

HARBISON, Justice.

In this action a homeowner's insurance carrier sought a declaratory judgment to determine whether its policy afforded coverage and required defense of a tort action filed against the insureds.[1] The insurer denied coverage, relying upon an exclusion in the policy. The Chancellor held that there was coverage. In a divided decision, the Court of Appeals reversed.

All parties moved for summary judgment after depositions of the insured, Sherman Cherry and Harriet Cherry, were filed. Neither party contends that there is any dispute as to material fact. Although the insurer mentions the credibility of Mrs.

---

1. Joined as a defendant by the insurer was the plaintiff in the tort action. Initially an injunction was sought against his proceeding with that action pending resolution of the coverage issue. However, he was permitted to answer on the merits, to participate in the taking of depositions and to pursue a motion for summary judgment, without apparent objection to his standing. He, rather than the insureds, has taken the leading role in the litigation on the coverage issue. When the insurer lost in the trial court, it made him a party to the appeal. The insurer challenges his standing in this Court to seek review by petition for certiorari, but under the circumstances we think this claim comes too late.

Cherry and refers to prior contradictory statements given by her, it did not seek a trial but has pursued its claim for summary judgment throughout the litigation. Issues of credibility and weight of evidence address themselves to the trial of contested facts, not to summary judgment.

The tort claim against the insureds arose out of an accident which occurred in their home on June 17, 1975. In the accident their infant grandchild received fatal injuries. The grandparents were keeping the infant and another young grandchild for a few hours to accommodate their married daughter, as they frequently did. In addition, their two sons, aged seventeen and twenty, were at home. Also there on the occasion of the injury was a nine or ten-year-old child, Bobby Norris, who was being cared for by Mrs. Cherry under a babysitting arrangement with his parents. Bobby was alleged to be mentally retarded. The injury to the insureds' grandchild occurred when Bobby picked up the baby and then in some manner dropped her or allowed her to fall from the carrier in which she had been lying.

The facts surrounding the accident are very briefly mentioned in the depositions. The only description was given by Mrs. Cherry, as follows:

"I was back—well, I was laying on the bed next to her, and had got up to go to the kitchen to start my supper. And I heard her kind of gurgle, or something, and I ran in there, and that's when I found her."

The complaint in the tort action alleged that on the previous day, when Mrs. Cherry had been caring for both children, Bobby Norris had picked up the baby. It alleged that on the day of the accident when Mrs. Cherry left Bobby alone in the room with the infant, the baby began crying, and Bobby injured the child in an effort to quiet her.

The complaint alleged negligence, primarily against Mrs. Cherry, in leaving the two children together and unattended while she went elsewhere in the house. It alleged that on the same date Mrs. Cherry was caring for two other children of other persons. In her deposition, however, Mrs. Cherry denied this. She testified that Bobby was the only child other than her family members for whom she furnished care on that day.

In their depositions, Mr. and Mrs. Cherry admitted that Mrs. Cherry for several years had engaged in providing daily babysitting and childcare services for a few children. Mrs. Cherry testified that she never cared for more than "about four" children. Apparently in a prior statement to the insurer she had stated that the Norris child was the only one for whom she was babysitting on a regular basis. In her deposition she admitted that this was incorrect and that she cared for additional children, "but not all the time." She said she kept some of the other children three or four days a week but was not keeping them "on a regular basis." Her husband said that he assumed that she kept as many as "two, three children." [2]

Mrs. Cherry stated that on one occasion, about a year prior to the accident, she had run one newspaper advertisement offering childcare services. Her husband said that she kept pre-school children during part of the year and that during the summer, after school was out, she took older children. She had begun caring for the Norris child during 1974 as a result of her advertisement. She charged thirteen dollars per week for care for five days, which included lunch for each child. When children were left with her on a daily, rather than a weekly, basis, she charged four dollars per day. She had no records of the dates on which she kept children, had no written contracts or formal business organization, and named only one other person, a fellow church member, for whom she kept children. She said that

2. The testimony does not indicate sufficient activity on the part of Mrs. Cherry to qualify her residence as a "family day-care home," T.C.A. § 14–1401(6), so as to place it within the licensing requirements and regulations governing "child welfare agencies," T.C.A. §§ 14–1401 et seq.

sometimes she would keep "some" of the three children of that individual. At the time of her deposition she was regularly keeping one child in the afternoon after school and a very young child all day.

The insurance carrier filed a specimen of the policy held by Mr. and Mrs. Cherry. It appears to be a standard form. In addition to providing fire and comprehensive insurance coverage on their home, the policy provided medical benefits and liability insurance for personal injury and property damage. Although there are several exclusions from coverage, in this case the company relies entirely upon the following clause, providing that the policy does not apply:

"d. to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits;"

In the general conditions of the policy there are several definitions applicable to all of the coverages. Among these is the following:

"d. 'business' means

(1) a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purpose . . . ."

Excluded from the definition of "business" is the rental of portions of the residence "unless for the accommodation of three or more roomers or boarders." It would appear, therefore, that the keeping of one or two "roomers or boarders" would not fall within the definition of a "business" and thus might not be a "business pursuit" under the exclusion involved here. Neither the insureds nor the third-party claimant insist that Mrs. Cherry regularly kept fewer than three children, however, and they seemingly concede that her caring for Bobby Norris constituted a "business pursuit" even though he was her only "customer" on the day of the accident.

There is little information in the record as to the underwriting involved. The insurer insists that the policy was issued at a lower premium than would otherwise be charged because of the exclusion relied upon. There is no proof in this regard, however, nor any other testimony from the underwriting agent. Mr. Cherry testified that he had had homeowner's insurance for twenty-three years, but not always with the same agent or company. Only once did he ever recall an insurance agent visiting his home, and he said there had never been any discussion between him and the insurer regarding the policy provisions or exclusions. He thought that his wife had been providing child care for some five or six years before the accident but could not recall whether she was doing so when the underwriter visited the premises. It is therefore not possible to dispose of this case upon a factual determination as to the intent of the parties, waiver or estoppel. In the recent case of *American Family Insurance Co. v. Dewald,* 597 F.2d 1148 (8th Cir. 1979) coverage under a similar policy was denied because the insurance agent informed the insured that the policy would not cover injuries to children being kept in the home by the wife. He offered such coverage for an additional premium. The appellate court held as a factual matter that no coverage was expected or anticipated and found it unnecessary to decide whether the insured's activities constituted a "business pursuit" within the language of the exclusion.

Assuming, as we must on this record, that Mrs. Cherry was engaged in such a pursuit, it must be determined whether the exclusion is applicable to the facts presented or whether the "exception" to that exclusion provides coverage.

The language of this exclusion has been the subject of many cases throughout the United States. These have arisen in many different contexts, and divergent results have been reached. *See generally* Annot., 48 A.L.R.3d 1096 (1973). A number of courts have found the language of the exclusion, and the exception contained therein, to be ambiguous. Others have held to the contrary on specific facts. Nearly all of the courts have found the language difficult of interpretation and application. As stated by the Alabama Supreme Court in

the recent case of *Stanley v. American Fire & Casualty Co.*, 361 So.2d 1030, 1032 (Ala. 1978):

"The provision does not lend itself to clarity, resulting in a split of opinion over whether it is ambiguous, with the consensus being that it is poorly worded."

While the Michigan Court of Appeals concluded that the clause was not ambiguous, it found it difficult to apply and stated that its application was "resolvable only in specific factual contexts." *State Mutual Cyclone Insurance Co. v. Abbott,* 52 Mich.App. 103, 216 N.W.2d 606, 608 (1974).

The exclusion was considered by the Court of Appeals of this state in *Cincinnati Insurance Co. v. Shelby Mutual Insurance Co.,* 542 S.W.2d 822 (Tenn.App.1975). There, it was held that when the insured, who operated a business involving the sale of animals and pet supplies, kept a pregnant lioness at home, he was engaged in a "business pursuit" within the meaning of the exclusion. A child was injured by the lioness, and her claim against the insured was held not to be covered by the policy, despite a contention that the exception contained within the exclusion was applicable. Construing that exception, involving activities "ordinarily incident to a non-business pursuit," the court said:

" . . . this exception seems to be intended to provide coverage for ordinary homeowner activities even though money may be earned from them." 542 S.W.2d at 825.

The Court concluded, however, that the keeping of a lion was not ordinarily incident to nonbusiness pursuits, observing:

"Lions are not ordinarily kept at home." *Id.*

Similarly, the exclusion, rather than the exception, was held applicable and coverage was denied when a child was bitten by a wolf kept at home by an insured engaged in wild animal research. *North River Insurance Co. v. Poos,* 553 S.W.2d 500 (Mo.App. 1977).

A number of cases have involved injuries incident to babysitting services. The courts have reached different conclusions, as did the Chancellor and the Court of Appeals in the present case, in deciding whether coverage was afforded. All of these cases have involved injuries to children who were being kept under a childcare agreement, rather than to a member of the insured's own family as in the present suit.

Probably the leading case holding that coverage was afforded when one of the children being kept in a home suffered burns is *Crane v. State Farm Fire & Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089 (1973). In that case the insured had two young children of her own, and she simultaneously cared for two other infants of a working mother under an arrangement of indefinite duration between the two mothers.

Reversing an intermediate appellate court which had held that the insured was engaged in a "business pursuit", the California Supreme Court concluded that the policy provisions were ambiguous and should be construed against the insurance carrier. The court stated that the policy language should be considered as it would be when read by a layman, rather than by an attorney or an insurance expert, and that exclusionary clauses, in order to be enforced, must be plain, conspicuous and clear in meaning.

In that case, the court concluded that the language of the exception, rather than the general exclusion, was applicable, and that the insured was engaged in activities "ordinarily incident to nonbusiness pursuits" in caring for children in her home. The Court said:

"Indeed, it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children." 95 Cal.Rptr. at 515, 485 P.2d at 1131.

Referring to other cases in which the language of the exception had been construed, the court stated that the insurance carrier had, in an Illinois case,[3] posed a

---

3. *State Farm Fire & Cas. Co. v. National Union Fire Ins. Co.,* 87 Ill.App.2d 15, 230 N.E.2d 513

(1967) (horseplay in momentary deviation from regular work held covered).

hypothetical situation. Assuming that a salesman entertained a business guest on the golf course and accidentally struck the guest while swinging a golf club, the insurance carrier conceded that the exception to the exclusion would apply, despite the fact that the salesman was engaged in a "business pursuit" while entertaining the guest. Commenting upon the Illinois case, the California court said:

"Thus, State Farm in effect agreed in Illinois that its policy provides coverage if the insured is acting simultaneously in a business and a nonbusiness capacity and the accident occurs during the course of carrying out this dual role." Id., 95 Cal. Rptr. at 516, 485 P.2d at 1132.

The California court in the *Crane* case relied upon another frequently cited case, *Gulf Insurance Co. v. Tilley,* 280 F.Supp. 60 (N.D.Ind.1967), aff'd, 393 F.2d 119 (7th Cir. 1968). There a child being kept in the home for compensation was injured when she pulled a percolator filled with hot coffee off a table. The insured was held to be engaged in an activity ordinarily incident to nonbusiness pursuits in preparing coffee for herself and a friend.

The analysis in *Crane* and *Tilley* was questioned by the Supreme Court of Alabama in the case of *Stanley v. American Fire & Casualty Co.,* 361 So.2d 1030 (Ala. 1978). There a one-year-old child fell into some hot coals in the fireplace of the Stanley home where she was being kept. Mrs. Stanley regularly cared for some eight different children, no more than five at a time, at a charge of three dollars per day. She had gone to the kitchen to prepare lunch for herself, her own children and the other children whom she was keeping when the accident occurred.

Although finding that the policy language, identical to that involved here, was poorly worded and "could have been written with more specificity," the Alabama court concluded that the language was not ambiguous. It said:

"The baby was burned because of the condition on the premises, and the baby's own activity. The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is a failure to supervise rather than making coffee for a third party. Undertaking the business relation of child care for compensation is certainly not ordinarily incident to the conduct of a household." 361 So.2d at 1032.

To the same effect was the decision of the Florida Court of Appeals in *Peterson v. Highlands Insurance Co.,* 328 So.2d 49 (Fla. App.1976), where the insured was "running a nursery or babysitting service for compensation."

On the other hand, the policy provisions were found to be ambiguous and the insurer not entitled to summary judgment in the case of *Nationwide Mut. Fire Insurance Co. v. Collins,* 136 Ga.App. 671, 222 S.E.2d 828 (1975), where the insured kept two children for compensation in addition to two young children of her own. She did not run a licensed establishment and had never advertised for customers. Using the same general rules of construction and interpretation as had the California court in *Crane, supra,* the Georgia court concluded that the insured, in caring for the child of a working mother was, or could be found by a trier of fact to be, engaged in activities ordinarily incident to nonbusiness pursuits. It therefore affirmed a decree of the trial court denying summary judgment to the carrier which relied upon the policy exclusion.

It is apparent that there is a substantial split of authority in the cases dealing with injury to a child being kept in a private home under a contract with his parents for part-time daily care. In these cases the duty of the insured to the child arises solely out of the contractual or business arrangement. Some of the courts have held that

that arrangement constitutes a "business pursuit." Others have concluded that even if it does, the policy provision does not exclude coverage for all such activities and expressly covers claims connected with business pursuits if these involve activities "ordinarily incident" to non-business pursuits. Commercial childcare has been found by some to fall within the exception. In some of these cases, and in other types of cases involving the policy provision, the emphasis has been upon the "instrumentality" causing the injury; in others, upon the particular activity in which the insured was engaged at the moment of the accident.

As pointed out by the California court in the *Crane* case, *supra,* the policy provision deals in general terms with activities which, in some instances, may simultaneously involve both a business purpose and a non-commercial one. Not in every case are the two portions of the clause mutually exclusive—as in the hypothetical golfing incident.

In the present case it seems to us that it could reasonably be concluded that at the time of the accident the insured was simultaneously engaged in a "business pursuit" in caring for Bobby Norris and in nonbusiness activities in caring for her two grandchildren and in preparing dinner for her family. The gravamen of the tort claim against her, however, is not a breach of duty toward Bobby Norris resulting in injury to him, as in the cases discussed above, but in the alleged neglect of her granddaughter, for whose injury the suit is brought. Even though the keeping of Bobby may have met the definition of "business" under the general conditions of the policy, Mrs. Cherry was also engaged in activities usually incident to nonbusiness pursuits in gratuitously caring for her own household and grandchild. It is her failure to provide proper care for that child which constitutes the legal basis, if any, for her alleged liability. The claim, at least in part, arises out of or is "incident to" that non-commercial activity.

On these facts, therefore, we do not believe that the wrongful death claim arose exclusively out of the "business pursuit" of the insured so as to entitle the insurer to summary judgment. We do not attempt here to resolve the issue of whether the policy language is "ambiguous" or merely "difficult" to apply. Unless the facts clearly bring a case within the ambit of a policy exclusion, doubt should be resolved in favor of coverage. *Travelers Insurance Co. v. Aetna Casualty & Surety Co.,* 491 S.W.2d 363, 367 (Tenn.1973).

We are of the opinion that the Chancellor correctly concluded that the insured was entitled to coverage and a defense in the tort action. We express, of course, no opinion upon the merits of that action or upon whether the claimant would be entitled, either legally or factually, to recover. It is sufficient to note that the policy provides coverage for alleged liability for personal injury even if the allegations of the complaint are groundless.

The judgment of the Court of Appeals is reversed and that of the trial court reinstated at the cost of respondent. The cause will be remanded to the trial court for collection of costs accrued there and for any further orders which may be necessary.

BROCK, C. J., and FONES, COOPER and HENRY, JJ., concur.