UNITED STATES FIRE INSURANCE COMPANY
*v.* Johnathan L. REYNOLDS

CA 83-54                                      667 S.W.2d 664

Court of Appeals of Arkansas
Division II
Opinion delivered April 11, 1984
[Rehearing denied May 9, 1984.]

142

*Barber, McCaskill, Amsler, Jones & Hale,* for appellant.

*Compton, Prewett, Thomas & Hickey, P. A.,* by: *Robert C. Compton,* for appellee.

MELVIN MAYFIELD, Judge. This case involves the liability coverage of a homeowner's insurance policy issued by the appellant to the appellee.

The appellee, Johnathan Reynolds, was employed by Natural Resources, Inc., a company primarily engaged in the growing and selling of timber. Appellee's father was the owner and president of the company and appellee was the timber manager for about 600 acres of the company's timberland. Appellee's duties included spotting the timber to be sold, negotiating prices, checking the timber to see that it was properly cut, maintaining the boundary lines, and protecting against theft, fire, and arson.

For about three weeks prior to the incident giving rise to this suit, appellee had been aware that timber was being cut and removed from the company's land without authorization. He reported this to his father who contacted the sheriff's office, and appellee was instructed to work with the sheriff and his deputies to stop the stealing. Appellee went to the sheriff's office, discussed the matter with some deputies, and was told to keep on the lookout for the thieves and try to find out who they were.

A few days later appellee discovered three men cutting timber without authorization. He had seen two of them on the land before and had been told that they might be the timber thieves and that they were armed and dangerous. Without making his presence known, the appellee watched these men load the timber into a truck and drive away. He reported this information to the sheriff's office. After some discussion, it was decided that the value of the timber appellee saw cut and carried away would not amount to a felony and that he should try to catch the men stealing some more timber so they could be charged with a felony.

On October 19, 1978, appellee was in the woods and heard a chainsaw. He drove closer, and taking his 30.06 rifle, he got out of his vehicle and walked to within 40 or 50 yards of where some timber was being cut. At that point he could see two trucks. One truck, loaded with timber, began to pull away and appellee shot out a rear tire. The driver got out and began walking toward the other truck. He was one of the men appellee had seen cutting the timber on the earlier occasion. Appellee told him to stop, and when he did not comply, appellee fired a shot into the motor and another

shot into a tire of that truck. Another man, Finis Lee, then appeared from the woods and walked toward appellee. Four times the appellee called upon Lee to stop but Lee, cursing appellee, continued to advance toward him. Appellee then fired a shot into the ground near Lee; the bullet shattered and fragments ricocheted into Lee's leg.

Appellee testified that when he fired that shot he did not intend to injure Lee and that he could have hit him ten out of ten times if that had been his purpose. He said it was a warning shot fired for self-protection; that arresting Lee or stopping him from stealing timber did not cause him to fire the shot; and that it was fired for his own defense. He did admit, however, that he shot the trucks to disable them and let the sheriff proceed from there.

Lee filed suit for personal injuries and damages against appellee. The appellant denied coverage under the "business pursuits" and the "expected or intentional injuries" exclusions of the policy. The personal injury suit is still pending and the case here is a declaratory judgment action in which the appellee has obtained a judgment that appellant must defend the suit brought by Lee and pay any sum that may be found due by appellee to Lee.

The "business pursuits" exclusion of the policy provides that the liability coverage does not apply *"to bodily injury or property damage arising out of business pursuits except activities therein which are ordinarily incident to non-business pursuits."*

The trial court, sitting without a jury, found as follows:

The Court finds that the shot which injured Mr. Lee did not arise out of the business pursuits of Mr. Reynolds, but arose out of his sense of self-protection in what he perceived to be a threat to his person from Mr. Lee and his associates. He was not at that point protecting the property of his employer, but protecting himself. The injury to Mr. Lee did not "arise out of" Mr. Reynolds' business pursuits. It did arise out of Mr. Lee's own actions. The Court finds that Mr. Reynolds'

act of firing the shot which injured Mr. Lee was an activity "ordinarily incident to non-business pursuits."

The parties have cited a number of cases to support their positions in this matter. The factual situations are so varied and the ways in which the issue reaches the appellate court so different, it is really not possible to formulate a concise statement that will explain the results reached, and it would not be helpful to make an extensive review of the specific cases. We start, therefore, with some general observations.

In 7A Appleman, *Insurance Law and Practice* § 4501.10 (Berdal ed. 1979), it is said, "Whether an activity is a business pursuit is almost always a factual question presented for the determination by a court." In that regard, in *Comm. Union Ins. Co. of Amer.* v. *Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977), it was said that "the courts strictly interpret exclusions from insurance coverage and resolve all reasonable doubts in favor of the insured who had no part in the preparation of the contract," and that "the burden of proof is on the insurer to show that an injury was caused by an excepted event." It is also clear that the exclusion does not apply to all injuries or damages arising out of a business pursuit since the clause itself explicitly states "except activities therein which are ordinarily incident to non-business pursuits." This is pointed out in the 1982 pocket supplement to 7A Appleman, *Insurance Law and Practice, supra.* In the supplement to section 4501.10, footnote 11 contains the following comment on a case cited there:

> The court failed to even consider the effect of the exception. The mere fact the insured is engaged in a business pursuit is not enough. It must also not be an activity ordinarily incident to nonbusiness pursuits.

In our case, the trial court relied upon *Farmers Insurance Exchange* v. *Sipple*, 255 N.W.2d 373 (Minn. 1977), where the insured, Andrew Baud, employed as a senior highway technician and assigned to a project involving the construction of an interstate highway, met with John Sipple, a local farmer who thought the construction would

create drainage problems on his land. While Baud and Sipple were viewing the Sipple farm, they exchanged heated words and Baud struck Sipple with his fist and injured him. A suit for damages was brought by Sipple. Baud's insurance company denied coverage under the "business pursuits" exclusion. A declaratory judgment was then filed and the trial court found, as a matter of law, that the exclusion did not apply. In affirming, the Minnesota Supreme Court relied upon a prior decision in which it had noted that the exclusion should be construed with reference to the particular facts of each case, and the court quoted the following from Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Policies. What the Courts Have Done With It,* 1970 Ins. L. J. 519, 533:

> There seems almost unanimous accord in the decisions that the location at which an act is performed is not decisive on the question of whether the act constitutes part of an excluded business pursuit. Rather, it is the nature of the particular act involved and its relationship, or lack of relationship, to the business that controls. Personal acts, such as pranks, do not become part of a business pursuit, so as to be outside of the coverage, merely because performed during business hours and on business property. In order for an act to be considered part of a business pursuit it must be an act that contributes to, or furthers the interest of, the business and one that is peculiar to it. It must be an act that the insured would not normally perform but for the business, and must be solely referable to the conduct of the business.

The court said the assault arose out of a business setting, but was not an act peculiar to the business activities of the insured.

The previous case that Sipple relied upon is *Milwaukee Mutual Insurance Co.* v. *City of Minneapolis,* 239 N.W.2d 472 (Minn. 1976), where a police officer, while in the roll-call room just prior to the start of his shift of duty, accidentally shot a fellow officer while they were handling a

service revolver and discussing its trigger pull. The trial court held that the exclusion clause did not apply, and in affirming, the appellate court said the trial court was not clearly erroneous in holding that pistol handling and trigger-spring checking were activities ordinarily incident to nonbusiness pursuits.

One of the cases cited by the appellant is *Martinelli* v. *Security Insurance Co. of New Haven*, 490 S.W.2d 427 (Mo. Ct. App. 1972), where Martinelli, while on the job, was pushing a large box onto a forklift and had his right leg outstretched to brace himself, when a fellow employee fell over the leg causing it to be fractured. The fellow employee had a homeowner's policy in force with the same "business pursuit" exclusion as is involved in the instant case. The appellate court, holding the exclusion applicable, said that walking or bumping into another employee at work may or may not be an activity incident to a nonbusiness pursuit; but since in that case, the incident took place while the insured was walking down an aisle on the way to get something for use in his work, it occurred while the insured was in furtherance of his business pursuits, therefore, it was not an activity ordinarily incident to a nonbusiness pursuit.

On the other hand, the injury caused by the insured in *Martinelli* arose out of the insured's employment, and if not peculiar to his employment, it was solely referable to the conduct of that employment because his only reason for walking down the aisle was to accomplish his employer's work. There simply was no activity involved which could be ordinarily incident to a nonbusiness pursuit. All he was doing was walking and that was a part of his work.

Further consideration of specific cases would probably not be helpful since, as noted in *Robinson* v. *UTICA Mut. Ins. Co.*, 585 S.W.2d 593 (Tenn. 1979), the language of this exclusion clause has been the subject of many cases with divergent results for different reasons, and its application is "resolvable only in specific factual contexts." In summary, therefore, we think the burden of proof was on the appellant to show that the injury in this case was excluded from the policy's liability coverage; that the exclusion clause should

be strictly interpreted with all reasonable doubts resolved in favor of the insured; that the issue involved is a question of fact; that the trial court's finding was not clearly erroneous and, under Civil Procedure Rule 52(a), that it should be affirmed.

As to the "expected or intentional injuries" exclusion, little more needs to be said. The same rules of construction and burden of proof apply to this exclusion as apply to the other exclusion which we have discussed. In *Talley* v. *MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), it was held that insurance coverage would be allowed for the unintended results of an intentional act, and the court rejected, in this regard, the tort concept of intending the natural and foreseeable consequences of one's acts.

*Talley* also holds that the question of intent is an issue of fact. The appellee testified that he did not intend to injure Lee, but only wanted to cause Lee to stop his advance toward appellee. Appellee also said he could have hit Lee ten times out of ten if that had been his purpose. The trial court found that appellee did not intend to injure Lee and that injury to Lee was not expected by appellee when the shot was fired. We hold that those findings are not clearly contrary to the preponderance of the evidence.

Affirmed.

CLONINGER and CORBIN, JJ., agree.