## CIRCUIT COURT OF STAFFORD COUNTY

Massachusetts Bay Ins. Co.

v.

Edna M. Fischer
and William K. Noble

April 14, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

In this declaratory judgment action, the plaintiff asks the court to declare that a homeowner's policy issued to William K. Noble does not cover an incident which caused injury to Edna M. Fischer in Noble's home on November 21, 1985. Specifically, the insurer seeks a declaration that Noble was engaged at the time in a "business pursuit" within the meaning of an exclusionary clause in the policy.

By agreement of all counsel, the case has been submitted to the court, without a jury, on the pleadings, the depositions of Noble and Fischer, the insurance contract, and memoranda of law.

Noble and Fischer's daughter, Doris Westervelt, have known one another for many years. Prior to 1985, they had taken four or five trips together. Westervelt and Fischer had used the services of Venture World Travel, an agency created by Noble in 1982, to plan and book cruises. On one previous occasion, Westervelt and Fischer had been overnight guests, for purely social purposes, in Noble's home.

From the evidence, it is apparent that Noble, Westervelt and Fischer are "travel buffs." Noble, for example, has been on more than eighty cruises.

Some time in the summer of 1985, Noble organized a cruise to England aboard the *QE II* and solicited bookings by a mail-out from Venture World Travel to members of

the agency's "cruising society," which included Westervelt. The cruise was to originate in New York. Westervelt signed on, and suggested that her mother do likewise. Fischer agreed and paid a deposit to Venture World Travel.

Originally, Fischer was to fly from her home in Florida to New York and board the *QE II* with her daughter there. Later, arrangements were made for optional boarding in Norfolk. Conversations among Noble, Westervelt and Fischer resulted in Fischer's decision to fly to Dulles and board the ship in Norfolk. Noble invited Fischer to stay overnight at his home in Fredericksburg and she accepted. Noble assisted in making airline reservations for Fischer. Venture World Travel does not engage in airline bookings, but he made the arrangements through another travel agency in the Fredericksburg area.

On November 21, 1985, Fischer flew to Dulles and was met by Noble's secretary who drove her to Fredericksburg. Fischer waited at the auto dealership until Noble completed some business there, and then Noble and Fischer travelled to Noble's home to spend the night. Fischer, who is 92 years old, fell and sustained injuries shortly after she arrived at Noble's residence.

*Venture World Travel*

Venture World Travel is owned by Noble. It is a sole proprietorship. Although Noble testified that he established the agency for the purpose of getting reduced rates on cruises for friends and acquaintances, he conceded that he "would like to make some money." Noble operates the agency out of his auto dealership in Falmouth, does not advertise, and has no paid employees. On the other hand, Noble, through the agency, is a member of the American Society of Travel Agents; maintains a bank account; publishes a newsletter; charges commissions; and uses letterhead stationery and invoices. Noble uses his secretary, on the payroll of the auto dealership, as a "travel consultant" for the agency.

By any reasonable measure, Venture World Travel was, at the time of the accident, a business venture. Noble engaged in commercial transactions through the agency.

Nevertheless, the fact that Noble owned and operated a commercial enterprise engaged in planning and booking

cruises is not dispositive. In fact, the real inquiry is whether, *at the time of the accident*, Noble was engaged in a business pursuit.

## Language of the Policy

Noble's homeowner's policy, issued by the plaintiff, contains a rather common "business pursuit" exclusion. In other words, the policy does not cover, or apply to, "bodily injury . . . arising out of business pursuits of any insured." Expressly, the exclusion does not apply to "activities which are ordinarily incident to non-business pursuits." "Business" is defined in the policy to include "trade, profession or occupation."

The language of this exclusion has been the subject of many cases throughout the country, involving occurrences in many different contexts. Some courts have found the clause to be ambiguous. For example, the Alabama Supreme Court has said that "the provision does not lend itself to clarity, resulting in a split of opinion over whether it is ambiguous, with the consensus being that it is poorly worded." *Stanley v. American Fire & Casualty Co.*, 361 So. 2d 1030 (Ala. 1978).

However, the problem with the "business pursuits" exclusionary clause is not so much with its facial ambiguity as with the difficulty of its application to particular factual contexts. In other words, many factual situations to which the exclusion arguably applies, not the policy itself, are confusing, unclear and indefinite. The case at bar is a prime example.

## Nature of the "Pursuit"

Without doubt, an undertaking, engagement, activity or pursuit can take on characteristics of a commercial nature *and* of a personal or social nature. An attorney may prepare a lawsuit for a friend and invite the friend to go with him to the clerk's office to file the suit, after which they go by the attorney's house for lunch. Assuming that the attorney charges a fee for the legal work, this series of events is imbued with both business and social aspects. A car salesman may invite an out-of-town friend to inspect his newest models in the showroom and,

incidentally, to stay overnight at his home. Such an undertaking naturally combines qualities of salesmanship and personal friendship.

Similarly, here, the whole chain of events leading up to the accident contains aspects of a commercial transaction and social amenities. Noble booked Fischer on a cruise to England, a business pursuit. Because of his friendship with Fischer's daughter, and as a result of conversations among Noble, Fischer and Westervelt, Noble invited Fischer to spend the night with him in Fredericksburg before boarding the ship in Norfolk, a social amenity.

The invitation for the overnight stay was not extended as an inducement to Fischer. In fact, the evidence is clear that the invitation was extended some time after Fischer had booked the trip, paid her deposit and made plans to go. Noble does not ordinarily provide overnight accommodations for persons using the agency's services, much less does he provide such accommodations in his own home. The overnight stay was not part of the travel package. Instead, it is obvious that Noble suggested that Fischer stay overnight in his home because of, and as a favor to, Fischer's daughter, an old friend.

The recent case of *Virginia Mutual Insurance Company v. Hagy*, 232 Va. 472 (1987), is distinguishable. There, the court held as a matter of law that a similar "business pursuit" exclusionary clause applied to an injury sustained by a child in the insured's home, where the child was being cared for by the insured in exchange for compensation. The fact that the insured was in the process of discontinuing her day-care business, had filed a petition in bankruptcy, and was looking for other employment because of meager profits, did not change the business nature of the insured's engagement, the court reasoned. The court cited a New York case which defined the term "business pursuit" by reference to two elements: first, continuity of engagement or a stated occupation; and, second, an activity involving profit, motive or commercial engagements. The court disagreed with the insured's contention that the business pursuit has been discontinued and that, thereafter, the insured's motivation for caring for the child was love for the child rather than the prospect of financial gain. In applying the continuity-profits test, and concluding that the insured was engaged in a

"business pursuit" at the time of the accident, the court pointed out that "business ventures do not lose their identity as such merely because profits decline."

Unlike *Hagy*, this case does not hinge upon a continuation or discontinuation of an exclusively commercial undertaking. Fischer was not in the first instance invited to Noble's home for a business purpose or as a result of profit motive. She was there as a social guest, the invitation having been extended as a personal favor or social amenity.

The exclusionary clause does not apply to "activities which are ordinarily incident to non-business pursuits." Because of this language in the exception to the exclusion, some courts have determined that the exclusion applies only to claims which arise *exclusively* out of the insured's business pursuits. Using that line of reasoning, it has been said that the exclusion does not apply if the insured was acting simultaneously in a business and a nonbusiness capacity and the accident occurred during the course of carrying out this dual role. (*See, e.g.*, cases cited in *Robinson v. Utica Mutual Insurance Company*, 585 S.W.2d 593 (Tenn. 1979).)

The "exclusivity" test is too easy and simplistic. Each undertaking must be examined on its particular facts; and where the insured may have been acting simultaneously in a business and nonbusiness capacity, effort must be made to ascertain in which role the insured was acting at the time of occurrence.

Fischer's bodily injury sustained in Noble's home on November 21, 1985, did not arise out of "business pursuits" of Noble which were not "ordinarily incident to non-business pursuits." Noble was acting in a non-business capacity at the time, not engaged in a commercial undertaking or transaction.

### Conclusion

Applying the foregoing principles and standards, this court is of the view that the exclusionary clause in Noble's policy does not apply in this case, and that an appropriate final order should issue declaring that the exclusion claimed by the plaintiff is inapplicable.