# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1655

_____

Bruce Oakley, Inc.,            *

                            *

            Appellee,         *

                            *   Appeal from the United States

       v.                *   District Court for the

                            *   Eastern District of Arkansas.

Farmland Mutual Insurance Company,  *

                            *

           Appellant.      *

_____

Submitted: January 8, 2001

Filed: April 11, 2001

_____

Before HANSEN and HEANEY, Circuit Judges, and WEBBER[1], District Judge.

_____

HEANEY, Circuit Judge.

Bruce Oakley, through his corporation Oakley, Inc. (Oakley), stored soybeans from the 1992 harvest in a 500,000 bushel storage bin located in Morrilton, Arkansas. In February, 1993, Oakley's employees began to unload the storage bin and noticed that some of the beans were charred and blackened. The issue before us is whether

_____

[1]The Honorable E. Richard Webber, United States District Judge, for the Eastern District of Missouri, sitting by designation.

Oakley's Farmland Mutual Insurance policy covers the damage to the beans caused by fire and/or heat. The district court[2] granted summary judgment in favor of Oakley and awarded him $256,630.90 for the loss of the beans, pre- and post-judgment interest, as well as attorneys' fees and costs amounting to $52,988.13. We affirm.

We review the district court's grant of summary judgment de novo, and will affirm if the evidence, viewed in the light most favorable to Farmland Mutual Insurance, shows that there is no genuine issue of material fact and that Oakley is entitled to judgment as a matter of law. See Austin v. Minnesota Mining and Mfg. Co., 193 F.3d 992, 994 (8th Cir.1999).

The Farmland Mutual Insurance policy provision in question explains that:

> b.  We will not pay for loss, damage, or expense caused by, resulting from, contributed to or aggravated by the following causes, except that ensuing fire is covered unless otherwise excluded:
> . . .
>
> (2)         Wear and tear; deterioration; rust corrosion, or erosion; wet or dry rot; mold; inherent vice; latent defect.

The record shows that several people observed the blackened beans amidst heat, smoke, and steam. Oakley and his employees stated that some of the beans had stuck together in cones, requiring them to break the formations apart with rods to allow the heat to be released through the trapdoors at the bottom of the bin. As they worked, they hit hot spots that had to cool before being manipulated with the rods. According to the record, the hot spots glowed like charcoal and were orange. Witnesses testified

---

[2]The Honorable George Howard, Jr., United States District Court Judge for the District of Arkansas, Western Division.

that there was a smoke odor and a pungent soy sauce odor in the bin.  No one witnessed flames coming from the beans.

Dr. Richard Meronuck, a doctor of plant pathology, testified that the beans in Oakley's bin had been unaerated and moist, allowing mold to form.  As the mold grew, the moisture content of the beans increased, which generated heat and allowed a different, higher-temperature, higher-moisture fungus to grow.  Ultimately the temperature likely rose to a point where autoxidation occurred in the beans, causing the beans to burn.

Dr. Meronuck testified that when beans reach 170 to 215 degrees Fahrenheit they begin to give off a smoky vapor, and at 300 degrees Fahrenheit fire becomes a distinct possibility if there is oxygen present in the hot spot.  He explained that the temperature of the beans on the surface of the barge (where they had been placed) ranged from 47 to 67 degrees Fahrenheit a month after the blackened beans were first noticed.  He stated that "[n]one of the soybeans from the samples examined had the pitting and fissures typically found in fire-burned soybeans."  Dr. Meronuck also noted that the glowing orange beans that the men had seen likely were burning as a result of the presence of oxygen in the bin.

The issue before us is whether the "ensuing fire" exception to the exclusions is applicable here, and if not, whether Oakley can recover under the policy by some other means.  The insurance policy does not define fire.  The Oxford English Dictionary, Second Edition, defines fire as "the natural agency or active principle operative in combustion; popularly conceived as a substance visible in the form of flame or of ruddy glow or incandescence."  The 1997 American Heritage College Dictionary defines fire as "[a] chemical change that releases heat and light and is accompanied by flame."  Webster's 1984 New World Dictionary of the American Language defines fire as "the active principle of burning, characterized by the heat and light of combustion."  The

3

1997 McGraw-Hill Encyclopedia of Science and Technology defines the term as "[a] rapid but persistent chemical reaction accompanied by the emission of light and heat."

The witnesses' testimony reveals that, according to at least two of the cited definitions, they observed fire: there was smoke, heat, and orange light. Consequently, Oakley may recover under the "ensuing fire" exception to the exclusions, as the policy should be interpreted in a manner most favorable to the insured.

In the alternative, Oakley need not rely on the "ensuing fire" exception to recover. Heat damaged the beans, and heat was not explicitly listed as one of the policy exclusions. In Glens Falls Ins. Co. v. Linwood Elevator, a persuasive case with facts strikingly similar to this one, the court explained "[i]f the nearest efficient cause of the loss is one of the perils insured against, the courts look no further" in determining whether the damage is covered by the policy. 130 So.2d 262, 270 (Miss. 1961). The court continued, "[i]n such cases the insurer is not to be relieved from responsibility by showing that the property was brought within the peril insured against by a cause not mentioned in the contract." Id. As applied here, if the insurance company failed to articulate whether heat damage is insured where there may have also been fire damage, the policy should be interpreted in favor of the insured. Oakley may therefore recover under the policy.

The court below determined that:

> it is undisputed that the heat within the bin was initiated through the presence of mold and that as that spontaneous process continued, sufficient heat was generated to cause the oils and other volatile substances within the bean pod matter to vaporize. Defendant argues that since mold was the cause that set the chain of events in motion, then the loss is excluded under the policy. Plaintiff counters that even the evidence offered by defendant shows that the damage

4

was caused by resulting heat which is not excluded under the all risk policy.[3]

Under Arkansas law, insurance policy provisions should be interpreted in favor of the insured, and exclusions are to be strictly construed against the insurer with all reasonable doubts in favor of the insured. <u>Columbia Ins. Co. v. Baker</u>, 108 F.3d 148, 149 (8th Cir. 1997). The burden is on the insurer to prove that the loss arose from a cause excluded by the policy. <u>United States Fire Ins. Co. v. Reynolds</u>, 667 S.W.2d 664, 667 (Ark. App. 1984). There is nothing in the policy that excludes coverage of damage to beans due to heat; the insurance company should have explicitly listed heat damage as an exclusion if it was inclined to deny coverage for such damage. The district court properly awarded Oakley damages, pre- and post-judgment interest, and attorneys' fees. For the reasons cited above, we affirm the district court's granting of summary judgement to Oakley.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]<u>Bruce Oakley, Inc. v. Farmland Mutual Ins. Co.</u>, No. LR-C-97-524, slip op. at 8 (Feb. 17, 1998).