Argued and submitted May 18, 1983; resubmitted In Banc January 12,
affirmed March 14, reconsideration denied April 6,
petition for review denied May 22, 1984 (297 Or 227)

# ALLSTATE INSURANCE COMPANY,
*Respondent,*

*v.*

# KELSEY,
*Appellant.*

## (82-1176-NJ-2; CA A26785)

678 P2d 748

Allen G. Drescher, Ashland, argued the cause and filed the
brief for appellant.

Mark S. Wolfe, Medford, argued the cause for respondent. With him on the brief was Frohnmayer, Deatherage, deSchweinitz & Pratt, Medford.

BUTTLER, J.

Warren, J., dissenting.

## BUTTLER, J.

Defendant Kelsey, as personal representative of Tyler Kelsey, appeals from a declaratory judgment entered pursuant to an order granting plaintiff Allstate Insurance Company's (Allstate) motion for summary judgment. The trial court held that an insurance policy Allstate issued to defendant Loper excludes coverage of a claim for wrongful death of Tyler arising out of Loper's baby-sitting activities. We affirm.

Loper was baby-sitting one and one-half-year-old Tyler in her home when a ladder fell on him in his playpen, causing fatal injuries. The ladder, which was leaning against the house before its fall, had been used the day before the accident to pick blackberries on the Loper property. The record contains no explanation of why the ladder fell.

At the time of Tyler's death, Loper had a policy of insurance with Allstate, which provides:

"SECTION II - FAMILY LIABILITY

**"PART 1 - COVERAGE X
"FAMILY LIABILITY PROTECTION**

**"LOSSES WE COVER**

"We will pay all sums arising from the same loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury or property damage** covered by this part of the policy.

"* * * * *

**"EXCLUSIONS - LOSSES WE DO NOT COVER**

"* * * * *

"(8)   We do not cover **bodily injury** or **property damage** arising out of the business pursuits of an **insured person.**

"We do cover:

"a)   activities normally considered non-**business;**

"b)   the occasional and part-time **business** activities of an **insured person** who is a student under 21 years of age."

**"Definitions Used Throughout This Policy**

"* * * * *

**"5** 'Business' - means:

"**a)**   any full or part time trade, profession or occupation and the use of any part of any premises for such purposes; * * *"

Allstate brought this declaratory judgment action against Loper and Kelsey seeking to establish that Loper was conducting a business pursuit on her premises, which was excluded from coverage by section 8 of the policy.

Plaintiff and both defendants moved for summary judgment, and the trial court ruled in favor of Allstate. The court concluded that Loper's baby-sitting was a business as defined by the insurance contract and that the death of the child was caused by a failure adequately to supervise the child, or a failure to maintain the baby-sitting premises in a safe condition, in either of which cases the death arose out of the business pursuit of the insured and is not covered as an "activity normally considered non-business" under section 8(a) of the policy.

Kelsey argues that the trial court erred in granting summary judgment for Allstate and in not granting summary judgment for him for two reasons: (1) the baby-sitting Loper provided Tyler was not a "business pursuit," as defined by the insurance contract, and (2), even if Loper's babysitting was a "business pursuit," the injuries causing Tyler's death were caused by Loper's negligence in leaving the ladder leaning against her house in an unstable condition in the course of the "non-business activity" of picking berries. He argues that the accident should be covered under the exception to the business pursuits exclusion contained in section 8(a) of the policy.

■      We agree with the trial court that Loper's baby-sitting was a "business pursuit" within the policy definition. There is no dispute on the facts. Loper advertised her baby-sitting service in the newspaper over a period of several months. She expected and received compensation for the service. For one family, she had regular hours during which she baby-sat. Kelsey contends that, even though Loper's baby-sitting for other children might be a business pursuit under the policy, the sitting she did for the Kelseys was not, because she did it primarily as a favor with no profit motive, had no regular schedule and did not keep track of her time. She stated, however, that she was told that she would be paid $0.70 per hour by the Kelseys and, also, that she worked an average of 14 hours per week baby-sitting for them. The facts

support the conclusion that Loper was engaged in a part-time occupation of baby-sitting and used part of her home for that purpose. That activity is excluded from coverage.

Kelsey's second contention that, even if Loper's baby-sitting activity is not covered, the fact that the death of Tyler was caused by a ladder, not connected to baby-sitting, falling on the child brings the case within the exception of the exclusion is not persuasive. There is no relevance in the fact that the ladder that fell on the child had been used the day before in the course of a non-business activity — berry picking. If the premises were in an unsafe condition because the ladder was left in an unstable condition, the fact that the ladder had been used earlier for some unrelated purpose does not affect Loper's liability or coverage any more than if she had left a loaded shotgun in a place where the child could reach it.

*Safeco Ins. Co. v. Leslie,* 276 Or 221, 554 P2d 469 (1976), on which Kelsey relies, is inapposite. There, the insured had taken a gun to the service station where he worked. Another employe was injured when he knocked it to the floor, causing it to discharge. The injured employe sued the employer and also an employe, who was the insured under Safeco's homeowner's policy. Safeco filed a separate proceeding for a declaration that the exclusion from coverage was applicable and that it was not obligated to defend the claim against the injured employe. Although the insured was a gun enthusiast who wanted a gun with him wherever he went, the trial court found that he took the gun to the service station to protect the large amounts of cash that accumulated there. The court affirmed the trial court's holding that the exclusion applied, because there was a business purpose in the insured's taking the gun to work, even though he also had a personal reason for doing so.

A proper application of the analysis employed in *Safeco* requires the conclusion that the injury here is excluded. The critical question in that case was whether the insured had a business purpose in taking his gun to work on the night in question. The question here is whether the insured adequately supervised the child or maintained her business premises in an unsafe condition, not whether she took the ladder, used for

non-business purposes, to another's premises where it injured still another. In the latter case, the exclusion would not apply.

*Gulf Insurance Co. v. Tilley,* 280 F Supp 60 (ND Ind 1967), *aff'd* 393 F2d 119 (7th Cir 1968),[1] on which Kelsey also relies, comes closer to supporting his position. In that case, the insured was caring for a child in her home for compensation and the child sustained burns when she overturned a percolator the insured was using to make coffee for herself and a friend. Analyzing an insurance provision essentially identical to the one at issue in this case, the court explained:

> "[The provision] may fairly be read as saying that, as a general proposition, there will be no liability coverage with respect to an insured's 'business pursuits,' but that, as an exception to this broad rule, coverage will be extended to liability which arises, even though connected in some causal manner with the insured's 'business pursuits,' out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits. In other words, to give any meaning at all to the excepting clause, the policy must be read to extend coverage to certain acts or omissions which are not, by their very nature, tainted by being associated with an insured's business pursuits, but which, nevertheless, with respect to the insured's potential liabiity arising therefrom, may have been causally related to such business pursuits." 280 F Supp at 64.

The court characterized the insured's coffee-making activity as one not connected with baby care. Because the "particular activity which allegedly proximately caused," 280 F Supp at 65, the baby's injuries was incident to the non-business pursuit of preparing coffee, the court held the act not to be subject to the policy exclusion.

Although we question the reasoning of the court in *Tilley,* because it ignores the failure of the insured to supervise the child, that case differs from the case at bar in that Tilley was actively engaged in a non-business activity that the court said was the cause of injury. That view of *Tilley* was expressed by the court in *Stanley v. American Fire & Casualty Co.,* 361 So 2d 1030 (Ala 1978), a factually similar case. That court, after

---

[1] In a per curiam opinion, the Seventh Circuit agreed that there was no exclusion from coverage under the policy on the basis of the District Court's opinion. 280 F Supp at 60.

questioning the reasoning in *Tilley,* concluded that the "activity" referred to in the exception to the exclusion was the failure properly to supervise a young child. Because supervising children on a regular basis for compensation is ordinarily a business pursuit, the court held that the business exclusion was applicable.

We agree with *Stanley* and disagree with *Tilley.* The fact that the instrumentality that inflicted the injury was not used in the business activity of baby-sitting has nothing to do with the question whether the injury arose out of the business pursuit of baby-sitting if the cause of the injury was the negligence of the insured in failing adequately to supervise the child or in failing to maintain the baby-sitting premises in a safe condition.

Although it is true that any ambiguity in an insurance policy is resolved in favor of the insured, we find none here. The fact that courts in different states have reached different results in construing similar policy language does not create an ambiguity, at least when we are not persuaded by the reasoning of the decision that would suggest an ambiguity.

Affirmed.

**WARREN, J.,** dissenting.

I believe that the majority is wrong on several counts.

First, there is doubt as to what was intended by the exclusion and the exception to the exclusion contained in this policy. The provision excludes coverage for "business pursuits" but provides that "activities normally considered non-business" are covered. The exclusion and the exception appear often in homeowners' policies and have been the subject of considerable litigation in the context of "babysitting." *See, e.g., Camden Fire Ins. Ass'n v. Johnson,* 294 SE2d 116 (W Va 1982); *Stanley v. American Fire & Casualty Co.,* 361 So2d 1030 (Ala 1978); *Gulf Insurance Co. v. Tilley,* 280 F Supp 60 (ND Indiana 1967), *aff'd* 393 F2d 119 (7th Cir 1968), and other cases cited in *Annot.,* 48 ALR3d 1096 (1973).

The disputed issue in those cases and in this case is the meaning of the phrase "activities normally considered non-business." The disagreement arises over whether we are to look at the "activity" which caused the injury, in this case,

the fall of a ladder, or the "activity" being engaged in as a business pursuit, in this case, child care.

In taking the latter view, the majority equates the terms "pursuit" used in the exclusion and "activity" used in the exception. In arriving at the decision to exclude coverage, it inquires whether Loper's child care is a business pursuit. Having decided that it is, it asks whether that child care was an activity normally considered non-business. After the first answer, the second comes as no surprise.

I take a different view for several reasons. First, I would infer from the fact that the insurer used substantively different terms in drafting the exclusion and the exception that it intended different meanings. The provision can fairly be read to say that there is no liability with respect to "business pursuits," but that coverage will be extended to some act or omission not ordinarily associated with, although causally connected to, the insured's business pursuit. Second, I would infer from the fact that the company provided an exclusion and an exception to that exclusion that they intended the exception to have some meaning. To have any meaning at all, there must be some act or omission that is covered, even though it somehow is connected with a "business pursuit." The majority finds no coverage, because supervision of children ordinarily is incident to the business pursuit of supervising children. That reasoning renders the exception meaningless by making the same inquiry twice. I can imagine no "activity" that would ever be covered under that approach.

Third, the majority incorrectly interprets *Safeco Ins. Co. v. Leslie*, 276 Or 221, 554 P2d 469 (1976), to support its view. In *Leslie*, a truck driver employed at a service station was wounded when a gun discharged after he accidentally knocked it to the floor. The gun had been brought to the service station by an attendant, Leslie, who placed it under his coat in the supply room. After concluding that Leslie's work at the service station was a business pursuit, the court inquired further whether the exception for "activities * * * ordinarily incident to non-business pursuits" required coverage despite the exclusion. In applying that exception to the exclusion, the court looked to Leslie's purpose for bringing the handgun to work. Because he had stated that he wanted a gun at the service station to protect large amounts of cash which accumulated at

the station on Friday nights, the court reasoned that he had the gun at the station incident to a business purpose and that the exception to the exclusion would not require coverage in that case.

Following that analysis, I conclude that injuries incurred in connection with business pursuits are not covered when the activity which causes harm is in the business context for a business purpose. The other side of that proposition is that, when the harm producing activity is in the business context for a non-business purpose, there is coverage. This is much the same analysis that the majority finds not well reasoned in *Gulf Insurance v. Tilley, supra,* where the insured was caring for a child in her home for compensation and the child sustained burns when she overturned a percolator.

Under *Tilley* and *Leslie,* injuries that occur while the insured is engaged in a business pursuit are not excluded from coverage if the *particular* activity which caused the injury is incident to a non-business purpose. Applying that analysis to these facts results in coverage, because the cause of Tyler's death was the fall of a ladder that both parties agree was used exclusively in the non-business activity of berry picking and was not used for baby care in any manner.

I conclude that it is reasonable to interpret "activity" to mean the particular activity which allegedly caused the harm. Where two interpretations are reasonable, we are directed by ther well-established rule of law to construe the policy for the benefit of the insured. *Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980). That is especially true when the provision in dispute creates an exclusion from coverage under the general terms of the policy. *Stanford v. American Guaranty Life Ins. Co.,* 280 Or 525, 527, 571 P2d 909 (1977). To be effective, an exclusion in an insurance contract must clearly bring the particular act or omission within its scope. I cannot find that clarity in this case.

Further, even if the majority properly focuses on child care as the relevant activity, I believe it reaches the wrong conclusion. According to the majority's reasoning, the issue is whether caring for children is an activity normally

considered non-business despite the fact that in this particular situation it is a "business pursuit." Given the clear intention by the insurer that some activities "normally considered non-business" are to be covered even though they are "business pursuits," I would find home care of children to be an activity normally considered non-business.

The California Supreme Court in *Crane v. State Farm Fire and Casualty Company,* 95 Cal Rptr 513, 485 P2d 1129, 1131 (1971), stated:

"\* \* \* Indeed, it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children."

In *Crane,* the court found that the medical expenses of a child injured while being cared for for compensation by the named insured, was covered under a homeowner's policy. It did so, notwithstanding that the policy excluded "business pursuits" of insureds under the exception to the exclusion relating to "activities \* \* \* which are ordinarily incident to non-business pursuits." I believe that home care of children is an "activity normally considered non-business." Accordingly, I conclude that the majority is wrong for two reasons. First, the harm producing activity, *i.e.,* the placement of the ladder, was not incident to a business purpose. Second, the activity of caring for children in one's home or that of a neighbor's is normally considered non-business, even though it is sometimes done for compensation.

I would reverse.

Rossman, J., joins in this dissent.