Argued and submitted September 8, 1986, affirmed November 25, 1987, reconsideration denied January 8, petition for review denied February 17, 1988 (305 Or 103)

# AETNA LIFE AND CASUALTY COMPANY,
*Respondent,*

*v.*

## ASHE et al,
*Defendants,*

*and*

## ESTATE OF MICHELLE BRYDEN et al,
*Appellants.*

(A8401-00032; CA A37074)

745 P2d 800

John L. Langslet, Portland, argued the cause for

appellants. With him on the briefs was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

George W. McKallip, Jr., Portland, argued the cause for respondent. With him on the brief was Kennedy, King & Zimmer, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Warren, J., specially concurring.

## BUTTLER, P. J.

Aetna Life and Casualty Company (Aetna) brought this action for declaratory relief against its insureds, Vincent and Belinda Ashe and against the estate of Michelle Bryden and Steven Bryden and Teresa Bryden, who have made a claim against the Ashes arising out of the death of Michelle, the Bryden's child, while Belinda was babysitting her. It sought a declaration that the claim is not covered under the homeowner's policy which it issued to the Ashes.

The Ashes defaulted, and the trial court entered a partial summary judgment for Aetna against the Brydens, determining that: 1) Belinda's babysitting was a business pursuit within the meaning of the policy and 2) Aetna was not estopped from denying coverage. The court concluded that there was a genuine issue of fact regarding the applicability of the business pursuits exclusion, because the policy provides that that exclusion does not apply to "activities which are ordinarily incident to nonbusiness pursuits." After trial before an advisory jury, the court accepted the jury finding that Michelle's injuries were not caused by activities which are ordinarily incident to nonbusiness pursuits. The trial court pointed out that there was evidence from which a factfinder could so find. It then entered a judgment in favor of Aetna, declaring that its homeowner's policy does not provide coverage for injury to or the death of Michelle.

The evidence shows that Belinda was certified by the Children's Services Division as a child care provider and that, on the day in question, she was responsible for six children, including her own stepson and Michelle. Belinda was vacuuming the living room floor while Michelle and another child sat on a couch nearby. She heard other children playing in the street in front of the house and went outside to check on them. After a short time, she returned and found Michelle slumped over the vacuum cleaner. Michelle had received burns from an exposed wire on the vacuum cleaner and died three days later. There is evidence that Belinda used the vacuum cleaner almost every day when the children were there in order to meet the certification requirements of Children's Services Division; there is also evidence that she supervised the children before, during and after she vacuumed. She testified that

she does not vacuum regularly now, because she no longer engages in the business of babysitting.

The homeowner's policy provides, in pertinent part:

"If a claim is made or suit is brought against any *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, we will:

"a.   pay up to our limit of liability for the damages for which the insured is legally liable; * * *."

### "SECTION II -- EXCLUSIONS

"[This coverage does] not apply to *bodily injury* or *property damage:*

· "* * * * *

"b.   arising out of *business* pursuits of any *insured* * * *.

"This exclusion does not apply to:

"(1)   activities which are ordinarily incident to non-*business* pursuits." (Emphasis in original.)

The policy defines "business" as a "trade, profession or occupation." Belinda was performing the occupation of child care provider in providing an ongoing service for which she expected and received compensation. The Brydens do not dispute that the child care was a "business pursuit."

■ The only question is whether Michelle's injuries arose out of Belinda's business pursuit or were caused by an activity ordinarily incident to nonbusiness pursuits. In the first case, the injury would not be covered; in the second, it would be. Plaintiff's motion for summary judgment on that issue was denied, because it presented an issue of fact. There was a trial on that issue, and the trial court found that Belinda's vacuuming activities on the day in question were not incident to nonbusiness pursuits. We recognize, as did the trial court, that vacuuming a house may be an activity ordinarily incident to nonbusiness pursuits in some instances and that in other instances it may be incident to a business pursuit. We agree that an issue of fact was presented. Because there is evidence to support the trial court's finding, we may not disturb it.

There was much discussion in the trial court about the applicability of our decision in *Allstate Ins. Co. v. Kelsey,* 67 Or App 349, 678 P2d 748, *rev den* 297 Or 227 (1984), which

involved the application of similar policy language. Allstate's insured was caring for the Kelsey child at the time when the child was fatally injured when a ladder, which was leaning against the house, fell on him. Because the ladder had been used while picking blackberries the previous day, it was argued that the child's death was caused by a nonbusiness activity. We disagreed, stating:

> "There is no relevance in the fact that the ladder that fell on the child had been used the day before in the course of a non-business activity—berry picking. If the premises were in an unsafe condition because the ladder was left in an unstable condition, the fact that the ladder had been used earlier for some unrelated purpose does not affect [the insured's] liability or coverage any more than if she had left a loaded shotgun in a place where the child could reach it.

> "* * * * *

> "The fact that the instrumentality that inflicted the injury was not used in the business activity of baby-sitting has nothing to do with the question whether the injury arose out of the business pursuit of baby-sitting *if* the cause of the injury was the negligence of the insured in failing adequately to supervise the child or in failing to maintain the baby-sitting premises in a safe condition." 67 Or App at 353. (Emphasis supplied.)

The point we tried to make in *Kelsey* is that the injury was not caused by any nonbusiness activity of the insured, who was not engaged in any such activity at the time of the injury. Rather, it arose out of the business pursuit of the insureds—babysitting—and was caused by the insureds' failure to supervise or by their failure to maintain the premises in a safe condition, or by both. Given those facts, the injury came squarely within the exclusion and not within the exception to the exclusion.[1]

---

[1] One commentator describes the relationship between the exclusion and the exception to the exclusion:

"Under the exception stated in the exclusion, an activity normally engaged in as a personal, nonbusiness matter[3] will not be considered part of an excluded business pursuit merely because it occurs during an income-producing function. Perhaps this is because such acts retain their personal character wherever they occur, or perhaps because they are so closely identified with clearly covered acts that exclusion is a pragmatic and equitable impossibility.

---

"[3] For example, smoking, drinking coffee, playing practical jokes, and so forth." Frazier, "The Business-Pursuits Exclusion Revisited," 1977 Ins LJ 88.

*Kelsey* was decided on a motion for summary judgment, because there was no issue of fact as to whether the insureds were engaged in any activity involving the ladder at the time of the injury. Here, there is an issue of fact, which has been resolved after trial.

The Brydens assign two other errors. First, they contend that the trial court's instructions to an advisory jury[2] impaneled to assist the court in the trial were erroneous. Because the jury verdict was not binding on the trial court, and the trial court did not treat it as binding, any error in instructing the jury was harmless. Lastly, the Brydens contend that the trial court erred in not holding that plaintiff should be estopped from denying coverage. Assuming that they had standing to raise estoppel, which is doubtful, *see Security S & T Co. v. Portland F.M. Co.,* 124 Or 276, 293, 261 P 432 (1927), they failed to plead estoppel. Having failed to plead it, they may not seek the benefit of it. *Cody v. Ins. Co. of Oregon,* 253 Or 587, 454 P2d 859 (1969).

Affirmed.

**WARREN, J.,** specially concurring.

I concur in the result reached by the majority but think that much of its discussion is unnecessary to the decision.

In interpreting a policy of insurance, we must read the policy as we believe it would be understood by a reasonable person in the position of the insured. *Totten v. New York Life Ins. Co.,* 298 Or 765, 771, 696 P2d 1082 (1985); *State Farm Mut. Auto Ins. Co. v. White,* 60 Or App 666, 655 P2d 599 (1982), *rev den* 294 Or 569 (1983). That task is usually for the court. When, however, the meaning of a policy may be reasonably understood by different insureds to mean different things, depending on the circumstances, the question whether the policy covers a particular occurrence may be for the factfinder.

---

[2] The Brydens contended that they were entitled to a jury trial on the issue; Aetna did not agree. The trial court decided to impanel an advisory jury, and the Brydens reserved the right to treat the jury verdict as binding, if it were favorable, or as advisory, if it were unfavorable. Be that as it may, the problem is one of construing an insurance contract, which is a legal rather than an equitable question and is for the court. *Safeco Ins. Co. v. Leslie,* 276 Or 221, 224, 554 P2d 469 (1976).

Because I agree that a question of fact exists whether vacuuming would ordinarily be considered a business or a nonbusiness activity under the facts of this case, the trial court, as trier of fact, could properly resolve that question. We may not disturb its finding that vacuuming in this context was a business activity. Accordingly, there is no occasion to discuss *Allstate Insurance Co. v. Kelsey,* 67 Or App 349, 678 P2d 748, *rev den* 297 Or 227 (1984).

I believe that *Kelsey* was incorrectly decided for the reasons stated in my dissent in that case. It is interesting, however, that the majority here adopts, in part, the view of the problem which I advocated in *Kelsey;* that is, in short, "that injuries incurred in connection with business pursuits are not covered when the activity which causes harm is in the business context for a business purpose. * * * [W]hen the harm producing activity is in the business context for a nonbusiness purpose, there is coverage." 67 Or App at 357 (Warren, J., dissenting). Because in this case there was evidence that the harm producing activity was in the business context and for a business purpose, coverage was properly denied.