**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**Joseph C. REED, et al., Appellees.**

**No. B14–90–00893–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 20, 1992.

Rehearing Denied April 9, 1992.

Kathleen Walsh Beirne, Houston, for appellant.

*Alton C. Todd*, Otto D. Hewitt, III, Alvin, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal of a summary judgment for declaratory relief granting insurance coverage in favor of appellees, Joseph Reed, Frances Reed, Michael Ford and wife, Sheree Ford, individually and as sole surviving heirs of Michael Wayne Ford, III, deceased, and denying summary judgment and declaratory relief in favor of no coverage against appellant, State Farm Fire and Casualty Company. The trial court found, as a matter of law, that the homeowner's insurance policy issued to Joseph and Frances Reed by appellant covered an incident of liability which occurred on the Reed's property. The trial court also awarded reasonable attorney's fees in the amount of $20,000 for the handling of the matter through the trial court, $15,000 for appeal through the court of appeals, and $10,000 for appeal through the Texas Supreme Court. The trial court denied appellant's motion for summary judgment which would have denied coverage on the basis of a business exclusion contained within the policy. Appellant appeals from the court's denial of its summary judgment.

On February 18, 1987, an eighteen month old child, Michael Wayne Ford, III, drowned when he crawled through an opening in a fence that separated the play area from the pool. The accident occurred at the home of Mr. and Mrs. Reed who operated a registered family home for daycare services. The Reeds had in effect a homeowner's insurance policy issued by State Farm Fire and Casualty Company.

The family of the deceased child sued the Reeds in a wrongful death tort action. The bench trial resulted in a final judgment for $480,000 plus interest in favor of the Ford family and against the Reeds. The Fords and Reeds executed a covenant not to execute by which the Fords agreed not to execute against the Reeds and the Reeds assigned any cause of action they may

have against their insurance company, the appellant, to the Fords.

Following re-alignment of co-plaintiffs in this proceeding, the Fords and Reeds leveled numerous allegations against State Farm based on its coverage determination. The allegations included breach of contract, breach of covenant of good faith and fair dealing, negligent violation of the Texas Insurance Code and the Deceptive Trade Practices Act. State Farm answered, raised affirmative defenses of no coverage and other defenses, counter-claimed for declaratory relief and moved for summary judgment on its claim for declaratory relief. The Ford and Reed plaintiffs counter-claimed for declaratory relief, responded and filed their own motion for summary judgment. The trial court concluded there was coverage under the policy, entered judgment accordingly and ordered the coverage controversy severed so it could be appealed.

■ In appellant's first point of error, appellant asserts the trial court erred by granting summary judgment to the Ford and Reed plaintiffs instead of to State Farm. In appellate review of a summary judgment, we first focus on whether a disputed material fact issue exists that would preclude a summary judgment indulging every reasonable inference or doubts in favor of the nonmovants. *Gonzales v. Mission American Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990); TEX.R.CIV.P. 166. We then must decide whether the summary judgment proof established that the movant was entitled to summary judgment as a matter of law. *Id.* The facts regarding the accident on the Reeds' property are not in dispute. The only dispute concerns the court's interpretation and applicability of Reed's homeowner policy to these facts. Our review, therefore, focuses on whether movant was entitled to judgment as a matter of law based on the interpretation and application of the pertinent policy provisions.

■ The central argument in this point *of error is whether the court correctly interpreted and applied the pertinent provisions of the Reed's homeowner's insurance* policy. Appellant argues that this court should consider the correctness of the trial court's judgment based on several notes in the court's docket sheet. We disagree. An appellate court may not consider docket entries since they are only made for the clerk's convenience and are usually unreliable. *Miller v. Kendall*, 804 S.W.2d 933, 944 (Tex.App.—Houston [1st Dist.] 1990, no writ). There are only certain situations where docket entries may be considered and none of those situations exist in the present case. *See Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex.1986) (to determine whether court had authority to correct judgment by nunc pro tunc); *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (to determine if motion for new trial lost by clerk was filed or not); *Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 705 (Tex.App.—Houston [1st Dist.] 1986, no writ) (to determine clerical error in nunc pro tunc proceeding). We find it especially inappropriate to consider the notes in the docket sheet in this case, because it would be reviewing them as if they were findings of fact and conclusions of law which are not filed in summary judgment proceedings. See TEX.R.CIV.P. 296 ("In any case *tried* ... may request ... findings of fact and conclusions of law.").

The pertinent provisions of the Reeds' homeowner policy issued by appellant were as follows:

SECTION II—LIABILITY SECTION

\* \* \* \* \* \*

COVERAGE D—PERSONAL LIABILITY

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settle-

ment of any claim or suit as it deems expedient.

The Limit of Liability stated on Page 1 for Coverage D is the limit of the Company's liability for all damages, including damages for care and loss of services, as the result of any one occurrence.

EXCLUSIONS—Coverage D shall not apply:

1. to any business pursuits of an Insured except activities therein which are ordinarily incidental to non-business pursuits;

\* \* \* \* \* \*

DEFINITIONS APPLICABLE ONLY TO SECTION II INSURED

The unqualified word "Insured" includes (a) the Named Insured and (b) if residents of his household, his spouse, the relatives of either, and any other person under the age of 21 in the care of an Insured ...

BUSINESS

The term "Business" includes trade profession or occupation.

\* \* \* \* \* \*

BUSINESS PROPERTY

The term "Business Property" includes

1. property on which a business is conducted ...

There is no dispute among the parties that the policy was in effect or that it provided coverage for injuries occurring on the property and for which appellee might become liable. The only dispute concerns whether the business pursuits exclusion or its exception to the exclusion applied. Appellant asserts that the business exclusion of the policy clearly excluded coverage of the child's injury since it occurred on the Reed's property while the Reeds were conducting a family homecare business. Appellee argues that the injury resulted from a "nonbusiness pursuit", because it involves child care; or, in the alternative, even if it was a business pursuit, the injury resulted from an activity that fit the exception within this exclusion i.e. the maintenance of the fence.

■ To interpret coverage under this home insurance policy, it is necessary to examine exactly what is expressed in this provision. Insurance policies are controlled by rules of construction which are applicable to contracts generally. *Barnett v. Aetna Life Insur. Co.*, 723 S.W.2d 663 (Tex. 1987). Special rules favoring coverage will apply, however, if the language used in the policy or its application to the facts is found to be ambiguous. *See Id.; National Union v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991) (where exclusion did not clearly exclude simultaneous piloting by a qualified and unqualified pilot, exclusion found ambiguous and special rules of construction applied); *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977) ("[special] rules of construction will be applied only when the language of the policy is such that it may reasonably be given one of several constructions"); *Ramsay v. Maryland American General Insurance Company*, 533 S.W.2d 344, 349 (Tex.1976) (court affirmed trial court's summary judgment order in favor of insured construing in insured's favor, because disputed terms were ambiguous when applied to the particular facts of the case).

The pertinent business exclusion in the instant case has two parts:

1. *the exclusion*

"to any business pursuits of an Insured."

2. *the exception to the exclusion*

"except activities therein which are ordinarily incidental to non-business pursuits."

The policy defines businesses to include a trade, profession or occupation. Clearly, the day care services operated by the Reeds on their premises was a business under this definition. Nevertheless, the policy does not define what is a "business *pursuit*." Black's Law Dictionary defines "pursuit" as "that which one engages in as an occupation, trade or profession." BLACK'S LAW DICTIONARY (5th ed.) (1979). Looking at the full provision, it appears that "pursuit" applied to the present facts means that which the Reeds engaged in as part of the day care service. In the present case, appellant asserts the lack of supervision of the Ford child was what

caused the injury and therefore fits squarely in this business pursuit exclusion. Appellee argues, on the other hand, that the "premises defect", i.e. the hole in the fence that the Ford child crawled under, was what caused the injury, not the "lack of supervision", therefore, the exclusion does not apply.

 We agree with appellant's interpretation of the first part of this exclusion. The child's injury occurred as the result of business pursuits. The problem concerns the second part of this exclusion, the exception to the exclusion. The exception states "except activities *therein.*" The "therein" refers back to "business pursuits". Therefore, this exception states that injuries as the result of business pursuits are excluded from coverage unless the activities in such pursuits are "ordinarily incidental to non-business pursuits." Appellee argues that the Reeds' failure to maintain the fence was an activity ordinarily incidental to non-business pursuits, and, therefore, fits this exception. Appellant argues that the exception does not even come into play because the only activity was lack of supervision that resulted in the child's injury.

Appellant points to several cases from other states where the courts applied a business exclusion very similar to the one in the present case to child care situations where the injury results solely from negligent activity ordinarily incidental to the business pursuit of child care. *See e.g. Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438 (Iowa 1988) (child choked on twine left in crib); *Rocky Mountain Casualty Co. v. St. Martin,* 60 Wash.App. 5, 802 P.2d 144 (1990) (child touched stove used to heat house); *Rodriguez v. Safeco Ins. Co.,* 821 P.2d 849, (Colo.Ct.App.1991) (injury to child occurred while being cared for pursuant to child care business; no evidence of any other nonbusiness activity which could have caused injury); *Safeco Ins. Co. v. Howard,* 782 S.W.2d 658 (Mo.Ct. App.1989) (child molested). The present case is distinguishable from these cases, however, because there is uncontradicted evidence that one of the causes of the child's injury was the negligent failure to maintain the fence, an activity ordinarily incidental to a non-business pursuit. Therefore, we hold that the court did not err in finding that the facts of the case fit the exception to the exclusion.

 Appellant argues that the exception does not apply because, even if failure to maintain the fence may have been a homeowner's responsibility and a nonbusiness activity, the court rendered its judgment against the Reeds solely on a business invitee theory. Nevertheless, that does not preclude the exception from operating since the judgment rendered in favor of the Fords against the Reeds was not rendered to address the policy in effect between appellant and appellee. The policy exception clearly envisions a situation where both a business pursuit activity and a non-business pursuit activity caused an injury. Furthermore, the child was an invitee on the premises no matter what activity caused the injury. Accordingly, we overrule appellant's point of error one.

In point of error two, appellant argues the trial court erred in awarding attorney's fees to counsel for the Ford and Reed Plaintiffs. Appellant's argument is that it would not be proper to award attorney's fees if the judgment is reversed pursuant to appellant's point of error one. Since we overruled appellant's point of error one and found the judgment is not reversible, appellant's argument fails. The trial court correctly awarded attorney's fees. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 667 (Tex.1987) (Reasonable attorney's fees recoverable on insurance policy suits per TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986)); TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986) (authorizes reasonable and necessary attorney's fees are equitable and just in suits for declaratory judgment.) Appellant's point of error two is overruled.

Accordingly, the judgment of trial court is affirmed.