STATE FARM FIRE & CASUALTY
COMPANY, Petitioner,

v.

Joseph C. REED, et al., Respondent.

No. D–2377.

Supreme Court of Texas.

Sept. 29, 1993.

Rehearing Overruled May 11, 1994.

Kathleen Walsh Beirne, Fred A. Simpson, Mary Lou Flynn–DuPart, Houston, for petitioner.

Alton C. Todd, Alvin, Otto D. Hewitt, III, Davenport Law Firm, Galveston, for respondent.

## OPINION

HIGHTOWER, Justice.

This cause presents the question whether there is coverage under a homeowners insurance policy that excludes coverage for "business pursuits" of an insured except those pursuits that are "ordinarily incidental to non-business pursuits." Joseph and Francis Reed (the Reeds) and Michael and Sheree Ford (the Fords) filed a declaratory judgment action against State Farm Insurance Company (State Farm) seeking a declaration of coverage under a homeowner's insurance policy (policy) it issued for liability arising out of the death of the Fords' child while at a home child care center operated by Ms. Reed. The trial court granted summary judgment for the Reeds and the Fords, holding that the child's death was caused by an activity that was ordinarily incidental to non-business pursuits. The court of appeals affirmed. 826 S.W.2d 659 (1992). We affirm the judgment of the court of appeals.

Frances Reed operated a registered family home for day care services at her home. In 1987, eighteen month old Michael Ford III drowned in a puddle of water that settled on a tarp covering a swimming pool after crawling through a hole in the fence that separated a play area from the swimming pool. The

Fords sued the Reeds for wrongful death. The Reeds notified State Farm of Michael's death and sought coverage under their policy. State Farm concluded that coverage was excluded under the Reeds' policy[1] because Michael's death resulted from a business pursuit and defended the Reeds under a reservation of rights. After a non-jury trial, the trial court rendered judgment against the Reeds for $480,000 plus interest.[2]

The Reeds and the Fords filed this declaratory judgment action seeking a declaration that the judgment was covered by the policy. State Farm moved for summary judgment, alleging that there was no coverage based on the policy exclusion of coverage for any business pursuits. The Reeds and the Fords also moved for summary judgment, asserting that there was coverage based on the exception to the business pursuits exclusion for activities which are ordinarily incidental to non-business pursuits. The trial court granted summary judgment for the Reeds and the Fords and denied summary judgment for State Farm, holding that the exception to the "business pursuits" policy exclusion applied since Michael's death was caused by a business activity that was ordinarily incident to a non-business pursuit. The court of appeals affirmed, stating that "one of the causes of the child's injury was the negligent failure to maintain the fence, an activity ordinarily incidental to a non-business pursuit. Therefore we hold that the court did not err in finding

that the facts of the case fit the exception to the exclusion." 826 S.W.2d at 663.

## I.

State Farm asserts that there is no coverage under the policy because Michael's death was the result of an activity that was a business pursuit and the "ordinarily incidental" exception does not apply. We disagree.

## A.

 Generally, a contract of insurance is subject to the same rules of construction as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If the policy is worded so that it can be given only one reasonable construction, it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). However, if a contract of insurance is susceptible to more than one reasonable interpretation,[3] we must resolve the uncertainty by adopting the construction most favorable to the insured. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). An intent to exclude coverage must be expressed in clear and unambiguous language. *Id.*

## B.

Whether child care in the home for which some remuneration is received is excluded as a "business pursuit", or is an exception to this exclusion because it is "incident to non-

1. The homeowners policy contained the following language;
 **SECTION II—LIABILITY SECTION**
 Subject to the provisions and conditions of the policy, and of this form and endorsements attached, the Company agrees with the Insured named on Page 1 as follows:
 **COVERAGE D—PERSONAL LIABILITY**
 To pay on behalf of the Insured [the Reeds] all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of the policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.
 \* \* \* \* \* \*
 EXCLUSIONS—Coverage D shall not apply:

 1. to any business pursuits of an Insured except activities therein which are ordinarily incidental to non-business pursuits;

 \* \* \* \* \* \*

2. Among other things, the judgment stated:

 3. The Defendants, JOE REED and Wife, FRANCES REED, were negligent in the maintenance of the premises where the accident made the basis of this suit occurred in that said Defendants failed to maintain the premises to prevent children from gaining access to the swimming pool, and such negligence was a proximate cause of the occurrence in question.

3. Nevertheless, not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

business pursuits," is unclear. John Allen Appelman, 7A *Insurance Law and Practice,* § 4501.11, at p. 280–81 (1979). Other jurisdictions have taken three different approaches. The first approach is illustrated by *Stanley v. American Fire & Casualty Co.,* 361 So.2d 1030 (Ala.1978), in which a one year old was injured when she fell backwards in a bed of hot coals in the fireplace of her baby-sitter. The Alabama Supreme Court focused on the ongoing nature and profit aspect of the enterprise and held that child care for compensation was a business pursuit and was not ordinarily incident to non-business pursuits.[4] This approach has been criticized because it focuses too much on the business nature of child care and always renders the exception to the exclusion inapplicable in the child care context regardless of the specific activity that actually created the liability. *See, e.g., Allstate Ins. Co. v. Kelsey,* 67 Or.App. 349, 678 P.2d 748 (1984) (Warren, J. dissenting), *review denied,* 297 Or. 227, 683 P.2d 91 (1984); *see also Developments in Maryland Law,* 49 Maryland L.Rev. 509, 823 (1990).

The second approach is illustrated by *Crane v. State Farm Ins. and Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971). In *Crane,* a two and a half year old suffered burns on her hands and wrists while in the care of a baby-sitter. The sitter was paid for her services but also simultaneously cared for her own two children. In concluding the injury was covered by the baby-sitter's homeowner's policy, the California Supreme Court stated:

> Indeed, it is difficult to conceive of an activity more ordinarily incident to a non-commercial pursuit than home care of children.

95 Cal.Rptr. at 515, 485 P.2d at 1131.[5] This approach has been criticized as too broad because the "ordinarily incident to non-business pursuits" exception swallows the "business pursuits" exclusion, at least in the context of child care. *See, e.g., State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 613, 430 N.E.2d 641, 645 (1981); *see also Developments in Maryland Law,* 49 Maryland L.Rev. 509, 812 (1990).

The third approach is illustrated by *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60 (N.D.Ind. 1967), *aff'd per curiam* 393 F.2d 119 (7th Cir.1968). In that case, a child, while in the care of a baby-sitter, was severely burned by the contents of a coffee pot. The court focused on the type of activity that caused the injury (serving coffee) and held that it was not an activity ordinarily associated with the function of child care.[6] This approach gives effect to the exclusion and the exception but reaches conclusions that appear somewhat contrived. *See Developments in Maryland Law,* 49 Maryland L.Rev. 509, 824 (1990).

## II.

■ In this case, the policy provides, among other things, that State Farm will pay

---

4. The following courts follow *Stanley: Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438 (Iowa 1988); *State Mutual Ins. Co. v. Russell,* 185 Mich.App. 521, 462 N.W.2d 785 (1990); *MVG v. Lucas,* 590 So.2d 1322 (La.Ct.App.1991); *Felder v. Despinasse,* 564 So.2d 1331 (La.Ct.App. 1990); *Susnik v. Western Indem. Co.,* 14 Kan. App.2d 421, 795 P.2d 71 (1989); *McCloskey v. Republic Ins. Co.,* 80 Md.App. 19, 559 A.2d 385 (1989); *Allstate Ins. Co. v. Kelsey,* 67 Or.App. 349, 678 P.2d 748 (1984), *review denied,* 297 Or. 227, 683 P.2d 91 (1984). Other courts follow *Stanley,* although the non-business exception to the exclusion differs slightly in these cases: *Landis v. Allstate Ins. Co.,* 546 So.2d 1051 (Fla. 1989); *Haley v. Allstate Ins. Co.,* 129 N.H. 512, 529 A.2d 394 (1987); *Rocky Mountain Casualty Co. v. St. Martin,* 60 Wash.App. 5, 802 P.2d 144 (1990), *review denied,* 116 Wash.2d 1026, 812 P.2d 102 (1991); *Farmers Ins. Co. v. Wiechnick,* 166 Ariz. 266, 801 P.2d 501 (Ct.App.1990).

5. This approach was followed in the following cases: *Bankers Standard Ins. Co. v. Olwell,* 309 N.W.2d 799, 801–02 (Minn.1981); *Western Fire Ins. v. Goodall,* 658 S.W.2d 32, 34–5 (Mo.App. 1983); *Nationwide Mut. Fire Ins. Co. v. Collins,* 222 S.E.2d 828, 830–31 (Ga.App.1975).

6. Several other courts have adopted this approach. *See Floyd v. Northern Neck Ins. Co.,* 245 Va. 153, 427 S.E.2d 193, 196–97 (1993); *Rodriguez v. Safeco Ins. Co. of America,* 821 P.2d 849 (Colo.App.1991, cert. denied); *Economy Fire & Casualty Co. v. Bassett,* 170 Ill.App.3d 765, 121 Ill.Dec. 481, 484, 525 N.E.2d 539, 542 (1988); *Aetna Life and Casualty Co. v. Ashe,* 88 Or.App. 391, 745 P.2d 800 (1988), *review denied,* 305 Or. 103, 750 P.2d 497 (1988); *State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 613, 430 N.E.2d 641, 645 (1981); *see also Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga.App. 671, 222 S.E.2d 828, 832–33 (1975).

all sums which the Reeds become legally obligated to pay as damages because of bodily injury. The policy also provides there is no coverage under the policy for "any business pursuits of an insured except activities therein which are ordinarily incidental to non-business pursuits[.]" Neither party disputes that Ms. Reed's home day care operation was a business pursuit. Thus, we must determine whether the exception to the "business pursuits" exclusion applies.

The cases from other jurisdictions support the conclusion that this exclusion and exception are susceptible to more than one reasonable interpretation. *See, e.g., Stanley v. American Fire & Casualty Co.,* 361 So.2d 1030 (Ala.1978); *Crane v. State Farm Fire and Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971); *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60 (N.D.Ind.1967), *aff'd per curiam,* 393 F.2d 119 (7th Cir.1968); *see also* John Allen Appelman, 7A *Insurance Law and Practice,* § 4501.11, at p. 280–81 (1979). Under one interpretation, the Reeds liability arising out of home child care is always incident to a non-business pursuit. Under another reading, the Reeds' failure to maintain the fence constitutes a failure to safely supervise children enrolled in a child care program. Thus, this activity is not incident to a non-business pursuit. Yet under

another construction of the exclusion and the exception, the maintenance of the fence at a person's home is ordinarily incident to a non-business pursuit.[7]

We must resolve the uncertainty of a policy exclusion by adopting the construction most favorable to the insured. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). Based upon an examination of the text of this exclusion and exception and considering other possible reasonable interpretations, we conclude that the provision is ambiguous.[8] Therefore, strictly construing the policy language against the insurer and adopting the interpretation most favorable to the insured, we hold that coverage exists under the policy for damages resulting from the death of Michael.[9]

For the above reasons, the judgment of the court of appeals is affirmed.

Dissenting opinion by PHILLIPS, C.J., joined by HECHT, J.

ENOCH, J., not sitting.

PHILLIPS, Chief Justice, dissenting.

Because I believe the Reeds' homeowners' policy unambiguously excludes coverage for

---

7. We disagree with the dissent's application of the *Tilley* approach. The dissent asserts that the Reeds' failure to properly supervise Michael was the activity that caused Michael's death. However, the trial court specifically found that the activity that proximately caused Michael's death was the Reeds' failure to adequately maintain the fence located around the swimming pool. Nevertheless, one of the causes of Michael's death was the Reeds' negligent failure to maintain the fence.

Furthermore, contrary to the dissent's assertion, it does not matter if the fence was repaired pursuant to a business duty. 873 S.W.2d at 702 (Phillips, C.J., dissenting). Instead, the court's focus is whether the actual activity creating liability was *ordinarily* incident to a non-business pursuit. Maintenance of the yard fence surrounding the Reeds' pool is ordinarily incident to a non-business pursuit regardless of whether it is required by a state regulatory scheme, a local ordinance or other law.

8. The following courts have also held that this exclusion and exception are ambiguous: *Robinson v. Utica Mutual Ins. Co.,* 585 S.W.2d 593, 598 (Tenn.1979); *Foster v. Allstate Ins. Co.,* 637

S.W.2d 655 (Ky.App.1981); *State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981); *see also Smith v. Allstate Ins. Co.,* 241 Va. 477, 403 S.E.2d 696 (1991).

9. This case is similar to *Foster v. Allstate Ins. Co.,* 637 S.W.2d 655 (Ky.App.1981). In that case, Foster provided home day care for compensation. While in Foster's care, an infant died when he fell backwards on a coffee table in Foster's home. The Kentucky Supreme Court reviewed the different approaches adopted by other jurisdictions and determined that from the varying interpretations of the business pursuits exclusion and *ordinarily incidental to non-business pursuits,*

> the exception provision contained in the exclusion leaves some doubt as to its meaning, and is clearly susceptible to two reasonable interpretations, one of which would be favorable to the insured and one which would not. In such a case, the law of the commonwealth is that the interpretation favorable to the insured will be adopted.

637 S.W.2d at 657 (citations omitted).

liability arising from the death of Michael Ford III, I dissent.

Before attempting to interpret and apply the Reeds' policy to the facts of this case, it is important to consider the nature of Ms. Reed's child care enterprise at the time of Michael Ford's death. From 1984 to just after Michael's death, Ms. Reed operated one of over 14,000 "registered family homes" in the state, which are authorized by the Texas Department of Human Resources (TDHR) to provide day care services for as many as 12 children at a time.[1] Ms. Reed charged parents $37.50 per child, per 5–day week for her services. The scale of Ms. Reed's enterprise apparently required, and the revenue from it allowed, her to hire two additional employees. Her range of clients extended beyond mere family and close friends, as she advertised her services, while the Fords, for example, relied on third-party recommendations.

As a registered family home, Ms. Reed's enterprise was required to comply with a variety of TDHR regulations designed to ensure the safety of children under her supervision. One requirement was that "[i]f there is a swimming pool, wading pool, pond, creek, or other body of water on or near the premises of the home, children must be protected from unsupervised access to the water." TEXAS DEPARTMENT OF HUMAN RESOURCES, STOCK CODE 20320–0000, MINIMUM STANDARDS: REGISTERED FAMILY HOMES Appendix I, at 10 (April 1982); see also TEX.ADMIN.CODE § 81.106. When originally constructed in 1982 or 1983, the Reeds' swimming pool was not separated by a fence or other barrier from the rest of their back yard. In deposition testimony, Ms. Reed confirmed that the hurricane fence now separating the pool from the children's play area was later added to help meet the TDHR safety requirements. Michael Ford gained access to the pool by crawling under this fence through a hole allegedly dug by the Reeds' family dog.

When the Reeds bought their house in 1982 or 1983, they purchased a Texas standard homeowners policy, mandated by State Board of Insurance regulations and held by over four million other Texas homeowners, which they renewed annually. This policy contains strict limits on coverage of risks arising from business activities, defining "business" as "trade, profession, or occupation." One of the Reeds' declarations in the policy disclaimed that any "business pursuits" were conducted in their home, and a space for exceptions to that declaration was left blank. They continued to make this disclaimer with each successive renewal, even after Ms. Reed initiated her child care enterprise. The policy contained an exclusion to personal liability coverage for "business pursuits," and an exception to that exclusion for "activities therein which are ordinarily incident to non-business pursuits." While other types of coverage were available for business activities, the Reeds did not purchase any of these; rather, with each successive renewal, they continued to rely solely on their basic homeowners' policy to ensure them against risks arising from Ms. Reed's child care enterprise.

The Reeds do not dispute that the child care enterprise constituted a "business pursuit" under the meaning of the policy; instead, they argue that because the "incident to non-business pursuits" exception is ambiguous, we should apply the contra-drafter rule to find coverage. When construing a contract, the court's primary concern must be to give effect to the written expression of the parties' intent. E.g., *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983). The interpretation of a contract, and the issue of whether a contract has more than one reasonable interpretation, are questions of law which we must resolve by read-

---

1. Chapter 42 of the Human Resources Code, "Regulation of Child–Care Facilities," defines a "family home" as follows:

 [A] home that regularly provides care in the caretaker's own residence for not more than six children under 14 years of age, excluding the caretaker's own children, and that provides care after school hours for not more than six additional elementary school children, but the total number of children, including the caretaker's own, does not exceed 12 at any given time.

 TEX.HUM.RES.CODE. § 42.002(9). The Reeds registered their family home with the TDHR as required under Section 42.052 of the Code. *Id.*, § 42.052(c).

ing the contract as a whole. *Reilly v. Rangers Mgt., Inc.,* 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Applying these rules to the case at hand leads me to conclude that there is only one reasonable interpretation of the contested policy provisions: the Reeds are not covered.

I agree that where a provision of an insurance policy, like that in any other contract, is ambiguous, or susceptible to more than one reasonable interpretation, such uncertainty should be resolved against the drafter. *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). But not every difference in the interpretation of a contract amounts to an ambiguity. And certainly the fact that other jurisdictions are in disagreement cannot, by itself, justify a holding that language is ambiguous. *See Rodriguez v. Safeco Ins. Co.,* 821 P.2d 849, 853 (Colo.App.1991); *Allstate Ins. Co. v. Kelsey,* 67 Or.App. 349, 678 P.2d 748, 752 (1984); *Floyd v. Northern Neck Ins. Co.,* 245 Va. 153, 427 S.E.2d 193, 196–97 (1993); *McCloskey v. Republic Ins. Co.,* 80 Md.App. 19, 559 A.2d 385, 387 (1989).

Admittedly, a few courts in other states have, in similar fashion and in similar contexts, deemed "incident to non-business activities" exclusions ambiguous or have otherwise applied the contra-drafter rule to find coverage. *See State Farm Fire & Cas. Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 615, 430 N.E.2d 641, 647 (1981); *Foster v. Allstate Ins. Co.,* 637 S.W.2d 655, 657 (Ky. App.1981); *Robinson v. Utica Mut. Ins. Co.,* 585 S.W.2d 593, 598 (Tenn.1979); *see also Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga.App. 671, 222 S.E.2d 828, 832–32 (1975). Many more states, however, including all who have considered such provisions in the last decade, have held them not to be ambiguous. *See Stanley v. American Fire &*

*Cas. Co.,* 361 So.2d 1030, 1033 (Ala.1978); *Rodriguez,* 821 P.2d at 853; *Western Fire Ins. Co. v. Goodall,* 658 S.W.2d 32, 34 (Mo. App.1983) (citing *Dieckman v. Moran,* 414 S.W.2d 320 (Mo.1967)); *Haley v. Allstate Ins. Co.,* 129 N.H. 512, 529 A.2d 394, 396 (1987); *Kelsey,* 678 P.2d at 752; *Floyd,* 427 S.E.2d at 196–97; *Rocky Mtn. Cas. Co. v. St. Martin,* 60 Wash.App. 5, 802 P.2d 144, 146 n. 3 (1990); *see also Republic Ins. Co. v. Piper,* 517 F.Supp. 1103, 1106 (D.Colo.1981); *McCloskey,* 559 A.2d at 387 (construing "business pursuits" exclusion).

The act of supervision is the very essence of child care. That is what Ms. Reed was paid to do, and it is her failure to perform this duty that proximately caused Michael Ford's death. I thus reject the view that in determining whether the "incident to nonbusiness" exception applies, we should focus on some more specific act—for example, the failure to maintain the fence—that might be said to have caused the injury. *See Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60, 65 (N.D.Ind. 1967), *aff'd per curiam,* 393 F.2d 119 (7th Cir.1968); *Rodriguez,* 821 P.2d at 852; *Floyd,* 427 S.E.2d at 197.[2] *See also Developments in Maryland Law: Insurance Coverage of Injuries that Occur at Home Day-Care,* 49 Md.L.Rev. 509, 824 (1990).

While a handful of early cases suggested that the act of supervising a child might be "incident to nonbusiness pursuits," *see Crane v. State Farm Fire & Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129, 1132 (Cal.1971); *Bankers Standard Ins. Co. v. Olwell,* 309 N.W.2d 799, 801–02 (Minn.1981); *Goodall,* 658 S.W.2d at 34–35, these cases stand for the outmoded rationale that child supervision, even if for compensation, is somehow inherently "incident to non-business activities." This fails to comport with the modern realities of working parents, necessitating the proliferation of professional day care providers like Ms. Reed. Perhaps reflecting this, more recent decisions have

2. The Court points out that the trial court's judgment expressly referenced the Reeds' failure "to maintain the premises" as the basis for its holding. 873 S.W.2d at 700 n. 2, n. 6. As this is a question of law rather than fact, however, the trial court's articulated reason is not entitled to deference on appeal.

Even under this approach, however, I disagree that the act of maintaining the fence could reasonably be viewed as "incident to nonbusiness activities." As I have explained, the Reeds were required, under the applicable state regulatory scheme, to build and maintain the fence to ensure that children did not obtain unsupervised access to the water. *Cf. Economy Fire & Cas. Co. v. Bassett,* 170 Ill.App.3d 765, 121 Ill.Dec. 481, 484, 525 N.E.2d 539, 542 (1988).

uniformly repudiated the view that child care is always "nonbusiness." *See Stanley,* 361 So.2d at 1033; *Farmers' Ins. Co. of Arizona v. Wiechnick,* 166 Ariz. 266, 801 P.2d 501, 504 (Ct.App.1990); *Landis v. Allstate Ins. Co.,* 546 So.2d 1051, 1053 (Fla.1989); *Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438, 442; *McCloskey,* 559 A.2d at 390; *Maryland Casualty Co. v. Hayes,* 827 S.W.2d 275, 278 (Mo.App.1992);[3] *Haley v. Allstate Ins. Co.,* 129 N.H. 512, 529 A.2d 394, 396 (1987); *Kelsey,* 678 P.2d at 750–52; *Rocky Mtn. Cas. Co.,* 802 P.2d at 147; *see also Piper,* 517 F.Supp. at 1106; *United States Fidelity & Guar. Co. v. Heltsley,* 733 F.Supp. 1418, 1422–23 (D.Kan.1990).

I reject the notion that the supervision of children in full-time, for-profit, state-regulated residential child care enterprises can reasonably be deemed "incident to non-business pursuits."[4] The Reeds' Texas standard homeowners' policy was not intended to cover risks arising out of that or any other business pursuit.

One necessarily sympathizes with the plight of the Fords, who understandably desire the adequate and sure source of compensation for their son's tragic death that the Reeds' homeowners' policy might provide. But it is not the job of this Court to ensure such coverage where the policy at issue unambiguously excludes it. And, under this language, it is not the responsibility of the four million other Texans who have homeowners' policies to subsidize the business risks of the homeowner who initiates an at-home enterprise subject to certain risks without purchasing appropriate coverage.

I would reverse the judgment of the court of appeals and render summary judgment in favor of State Farm.

HECHT, J., joins in this dissent.

---

**3.** *But see Goodall,* 658 S.W.2d at 34.

**4.** In so doing, however, I do not categorically suggest that Texas standard homeowners' policies would exclude coverage of liability arising from *any* for-profit child care undertaken in the home. Certainly such activities as part-time ba-

bysitting by teenagers for a neighbor's child, even while compensated, would not fall into the same category as Ms. Reed's full-time business. *See United Serv. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 780–82 (Tex.App.—San Antonio 1991, writ denied).